PATRICK M. SHAHAN, APPELLANT, v. JANET HILKER, APPELLEE.

488 N.W.2d 577

Filed September 11, 1992.   No. S-89-1300.

Siegfried H. Brauer III, of Ross, Schroeder & Brauer, for appellant.

Daniel L. Lindstrom and Jeffrey H. Jacobsen, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Patrick M. Shahan appeals a $5,000 jury award he received for personal injuries and property damage incurred as a result of a no-contact accident in Kearney, Nebraska, involving the motorcycle he was riding and an automobile driven by Janet Hilker.

In substance, Shahan claims that the trial court erred when it (1) refused to permit the jury to consider evidence as to whether injuries and damages he received in a fall occurring subsequent to the motorcycle-automobile accident were the proximate result of Hilker's negligence, (2) denied Shahan discovery of a statement Hilker gave to her insurance carrier's adjuster following the accident, and (3) refused to grant Shahan a new trial because of an inadequate verdict. We reverse the judgment and remand the cause to the district court for Buffalo County for a new trial.

In reviewing a law action, the court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Kappenman v. Heule, ante* p. 54, 486 N.W.2d 27 (1992).

On June 15, 1987, Hilker was leaving the Hilltop Mall located on the east side of four-lane Highway 10 in Kearney. She drove her automobile west across the northbound lanes of the highway and turned south into the highway's westernmost southbound lane. In turning left into the westernmost southbound lane of the highway, Hilker intercepted the southbound path upon which Shahan was operating his motorcycle. Shahan testified that in an attempt to avoid a collision with Hilker's car, he took evasive action. He said he drove his motorcycle to his right and hit the west curb of the highway. He proceeded into 3- to 4-foot-tall weeds, which were just off the highway, and lost control of his motorcycle. Shahan testified that he "flew over the handle bars" of his motorcycle. He landed on his face and then on his left shoulder. Shahan testified that he had pain in his lower back, in the base of his neck and head, in his left leg, and in his arms. The appellant was taken to the emergency room of a hospital, checked by Dr. Lawrence Bauer, and went home. Three days later, Shahan went back to work, had pain, and returned to Dr. Bauer for treatment. Dr. Bauer had more x rays taken and referred Shahan to a Dr. Salumbides. Dr. Bauer told Shahan that he did not foresee any problem with Shahan's going to Grand Junction, Colorado, for a vacation so long as he wore a cervical collar and did not overexert himself. Dr. Bauer prescribed medication for Shahan.

On June 30, 1987, while visiting his wife's relatives in Grand Junction, Shahan talked with his brother-in-law at the breakfast table. The brother-in-law went to the basement of the home, and Shahan stood at the top of the stairs visiting with him as the brother-in-law did chores at the foot of the stairs. Shahan testified, "I don't know what really happened. I was standing there, next thing I know my legs went out from under me. I was dizzy, kinda. I went down the stairs." Shahan said he had taken only the medicines prescribed by Dr. Bauer. He

testified that he had extreme pain in his left side and neck and that "I couldn't put things together to stand up" as a result of his fall down the stairs. He was helped to a bed, where he rested and then took a hot bath, but his pain got worse, Shahan said. He was taken to a hospital, where he was given a hypodermic injection. He had a reaction to the hypo but subsequently returned to his brother-in-law's home that evening. With his wife driving, Shahan returned home to Kearney the next day. He saw Dr. Bauer and did not return to work until the latter part of August. At trial, Shahan testified that he still had a "lot of problems" with his arm and neck.

Shahan testified that Hilker stopped her car when he was attempting to get up from the weeds after the accident, but that she took off "south down the highway." Hilker returned to the accident scene. She was subsequently charged with "failure to yield right-of-way" and entered a plea of guilty to that charge.

Shahan first complains that the trial court refused to permit the jury to consider whether the injuries and damages he received in the fall down the stairs at his brother-in-law's home were a proximate result of Hilker's negligence in the prior motorcycle-automobile accident of June 15.

The record is silent as to what issues were submitted to the jury. None of the jury instructions were included in the transcript, nor were they requested to be included in that document. The record reflects that Shahan objected to only one instruction, and the record fails to reveal the content of that instruction and whether it was given to the jury. The bill of exceptions reflects that the trial court did sustain objections to Dr. Bauer's expressing an opinion as to whether the injuries Shahan received in Colorado were caused by the effects of the medications the doctor had prescribed for the injuries Shahan had received in the Kearney accident.

In an offer of proof, Dr. Bauer stated that the side effects of two medications taken by Shahan "might be light headedness, dizziness, [or] drowsiness" and that "probably both of those medications would have been at about their peak effectiveness at the time [Shahan] got up from the table and walked over to the top of the stairs and he very well may have lost his balance because of the medication and fallen down the stairs." In her

argument that the expert testimony was insufficient to establish causation of Shahan's fall, Hilker focuses on Dr. Bauer's use of the words "might," "probably," and "may." Brief for appellee at 11. However, when asked his opinion as to what caused the fall, Dr. Bauer replied, "Well, that would be my opinion that it was the result of the effect of the medication, that he sensed no pain." Dr. Bauer also stated that he prescribed the medication to relieve pain in Shahan's neck and that that pain was a result of the June 15, 1987, motorcycle accident.

We have said that "for medical testimony to be the basis for an award, it must be sufficiently definite and certain that a conclusion can be drawn that there was a causal connection between the accident and the disability." *Hohnstein v. W.C. Frank*, 237 Neb. 974, 982, 468 N.W.2d 597, 603 (1991). A medical expert's testimony need not be couched in the magic words " 'reasonable degree of medical certainty or a reasonable probability.' " *Id.* Considered as a whole, Dr. Bauer's testimony was sufficiently definite and certain. A fact finder could properly conclude that there was a causal connection between the June 15 motorcycle accident and the June 30 fall.

Hilker also argues that Shahan's fall was not proximately caused by Hilker's alleged negligence in that (1) Shahan failed to eliminate possible intervening causes of his fall, including his own negligence or that of his physician, and (2) Shahan's injuries resulting from the fall were not a foreseeable consequence of Hilker's alleged negligence.

In *Watkins v. Hand*, 198 Neb. 451, 453-54, 253 N.W.2d 287, 289 (1977), this court adopted the general rule which states that

"a tortfeasor whose negligence has caused injury to another is also liable for any subsequent injury or reinjury that is the proximate result of the original injury, except where the subsequent injury or reinjury was caused by either the negligence of the injured person, or by an independent or intervening act of the injured person, or by an independent or intervening act of a third person."

In *Delaware v. Valls*, 226 Neb. 140, 144, 409 N.W.2d 621, 624 (1987), we elected to maintain our traditional definition of an " 'efficient intervening cause,' " which we stated is "a new and independent act, itself a proximate cause of an injury, which

breaks the causal connection between the original wrong and the injury." Determination of causation is, ordinarily, a matter for the trier of fact. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990). Shahan should have been allowed to present evidence to the jury regarding causation of his fall down the stairs in Grand Junction. The trial court erred in disallowing the testimony of Dr. Bauer with respect to the cause of Shahan's falling down the stairs.

Shahan next argues that the trial court erred in overruling his motion to compel Hilker to produce statements which Hilker gave to her insurance adjuster concerning the June 15, 1987, accident. "Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action . . . ." (Emphasis supplied.) Neb. Ct. R. of Discovery 26(b)(1) (rev. 1992).

In *Brakhage v. Graff*, 190 Neb. 53, 56, 206 N.W.2d 45, 47-48 (1973), this court stated that

the weight of authority appears to support the rule that a statement by an insured to his liability insurer is privileged. "According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, *is a privileged communication, as being between attorney and client*, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him."

(Emphasis supplied.) This rule was not changed by the subsequent adoption of the current discovery rules or evidence statutes. The burden is on the party opposing discovery—in this case, Hilker—to show that the material sought is privileged. See, *Burlington Northern v. District Court*, 239 Mont. 207, 779 P.2d 885 (1989); *Nat. Farmers Un. Prop. & Cas. v. Denver D.C.*, 718 P.2d 1044 (Colo. 1986).

The record is silent as to whether Hilker's insurance contract required the insurance company to defend her through its attorney and as to whether the statement given to the adjuster was intended for the information or assistance of the attorney

488

in defending her. Upon remand, the trial court will need to determine whether Hilker's statement to the insurance adjuster is discoverable.

Because we are remanding this cause to the district court for a new trial on the issues of Shahan's subsequent injury and the discoverability of Hilker's statement to an adjuster for her insurance carrier, we need not further address Shahan's third assignment of error.

REVERSED AND REMANDED WITH DIRECTIONS.