James W. REASONS, Plaintiff/Appellant,

v.

UNION PACIFIC RAILROAD COMPANY, a Corporation, Defendant/Respondent.

No. 64745.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 30, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 19, 1994.

Application to Transfer Denied Nov. 22, 1994.

---

Fritz G. Faerber, Christine E. Anderson, Kujawski & Faerber, P.C., Belleville, IL, Joseph A. Murphy, Lucas & Murphy, P.C., St. Louis, for appellant.

Allan McD. Goodloe, Jr., James W. Erwin, David A. Stratmann, A. Laurie Koller, Thompson & Mitchell, St. Louis, for respondent.

PUDLOWSKI, Judge.

James W. Reasons [employee] had a long history of allergies, bronchitis and sinus problems. In 1976 he began working for Union Pacific Railroad [employer]. As a boilermaker, employee was continuously exposed to: asbestos, strong odors from diesel engines, cleaning agents, chemicals, spray paint, dust particles, fumes and black smoke created by welding around motor grease and other engine oils. The ventilation in the areas where employee worked was very poor. Employee alleges that under these circumstances he was under the impression that exposure to these products was merely triggering his allergies or that he was only experiencing normal reactions to these irritants. While at work, his chest tightened, his eyes watered and burned, his nose ran, his throat ached and he had trouble breathing. However, as soon as he left his work place, he felt fine. Employee claims that until he filed this action, employer did not provide him with adequate protective respiratory devices.

In 1979 employee was treated by his allergist Dr. Purcell Smith. Dr. Smith wrote a letter to Union Pacific informing them that "odors, fumes, and dust that [employee] encounters at work irritate the sinuses and bronchial tubes, and aggravate his *symptoms*." [1] Dr. Smith recommended in his note that employee wear some type of filtering apparatus or respirator when at work. Plaintiff testified, however, that he did not realize nor was he informed by his allergist at any time that his occupational environment was causing *permanent damage* to his lungs, sinus or respiratory system.

In December 1986, employee met with Dr. Robinson who referred him to Dr. Wilson, a pulmonary expert. Dr. Frank Wilson, who attended to employee from 1986 to 1987, diagnosed employee with chronic bronchitis with a possible asthmatic component. Although Dr. Wilson noted that employee wondered whether there was a possible connection between his employment and his condition and they discussed the possibility of employee taking on a new job, the doctor believed that employee's bronchitis and respiratory trouble "probably [had] no specific

---

1. Employer claims that employee never gave this note to his supervisors.

cause" and accordingly prescribed medicine for employee but allowed him to continue working for the railroad.

Employee began seeing Dr. Steven Snyder in 1988. It was not until January 23, 1990, that Dr. Snyder informed employee that he had developed occupational asthma as a result of his work environment. Dr. Snyder testified that a review of employee's medical records revealed he was the first physician to find a connection between employee's asthmatic condition and his employment.

By 1991 employee's asthmatic condition had reached an advanced stage. He suffered from *constant* fatigue, breathing and sinus problems and was unable to work for extended periods of time, and then, only with the aid of a positive air pressure respirator. He brought this action on January 31, 1991.

 In determining whether a grant of summary judgment was proper, we must consider the record in the light most favorable to an appellant. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984) (citing *Scott v. Thornton*, 484 S.W.2d 312, 314 (Mo. 1972)). The trial court's grant of summary judgment was proper if the pleadings, depositions, admissions and affidavits filed show there is no genuine issue of material fact and the moving party was entitled to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A genuine dispute is one which is "real and substantial" and "not consisting merely of conjecture, theory and possibilities." *Id.* at 378, 382. Summary judgment should be denied where the affidavits or other sworn statements require an evaluative judgment between two rationally possible conclusions, even if the court is convinced the evidence makes it unlikely that a party can prevail at trial. *Rogers v. Illinois Cent. R.R. Co.*, 833 S.W.2d 426, 427 (Mo.App.E.D.1992) (citations omitted).

 FELA actions are governed by federal law, and must be brought within three years from the date the cause of action accrues. *Kestner v. Missouri Pacific R.R. Co.*, 785 S.W.2d 646, 647 (Mo.App.E.D.1990). The leading United States Supreme Court cases which deal with the issue of when a claim accrues for purposes of determining whether the statute of limitations has expired are *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) and *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In *Urie*, plaintiff was a fireman who worked on steam locomotives of the Missouri Pacific Railroad. After working with silicon and experiencing shortness of breath for thirty years, plaintiff's condition deteriorated to the point at which he was no longer able to work. Plaintiff finally saw a doctor who diagnosed him with silicosis. Plaintiff brought suit the following year and the United States Supreme Court permitted the action noting that although plaintiff experienced symptoms of silicosis for a long time, the statute of limitations did not start ticking until plaintiff was diagnosed with silicosis. The court in *Urie*, 337 U.S. at 163, 69 S.Ct. at 1018, discussed the goal of the FELA protection and noted "We do not think the humane legislative plan intended [consequences such as dismissal of an action due to the running of the statute of limitations] to attach to blameless ignorance." The court, therefore, refused to find that the statute of limitations started running before plaintiff's condition had manifested itself. *Id.* at 170–171, 69 S.Ct. at 1025.

In *Kubrick*, a Federal Tort Claims Act case, the U.S. Supreme Court applied the discovery rule utilized in *Urie* to federally-created tort actions and held that a claim accrues when the plaintiff is "armed with the facts about the harm done to him", not when he knows that the defendant's conduct may be negligent. *Kubrick*, 444 U.S. at 123, 100 S.Ct. at 360. *Urie* and *Kubrick* have been interpreted to mean that an occupational disease claim accrues under FELA when the claimant is "aware or has reason to be aware that he has been injured and is aware or has reason to be aware of the cause of his injury." *Lloyd v. Missouri Pacific R.R. Co.*, 832 S.W.2d 310, 312 (Mo.App.E.D.1992) (citations omitted).

In *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434 (Mo. banc 1984), the Missouri Supreme Court held that "[a] cause of action accrues when and originates where damages are sustained and are capable of ascertain-

ment." *Id.* at 436 (citing *Renfroe v. Eli Lilly & Co.,* 686 F.2d 642 (8th Cir.1982)). The court held that although plaintiff began suffering from shortness of breath as early as 1973 and knew from reading union publications that long-term breathing of asbestos dust can cause asbestosis, he did not "know" that he had asbestosis until his diagnosis on May 13, 1976. "It was not until such diagnosis was made that the character of the condition (asbestosis) and its cause (breathing asbestos dust) first 'came together' for the plaintiff." The court, therefore, found that plaintiff's cause of action accrued on the date of the doctor's diagnosis and was not barred by the five year statute of limitations for § 516.190 actions.

We are further persuaded by *Ray v. Upjohn,* 851 S.W.2d 646 (Mo.App.S.D.1993) in which the court followed *Elmore* and reaffirmed that experiencing symptoms of a disease is not necessarily sufficient to start the statute of limitations running. In that case the plaintiff worked with a dangerous chemical and experienced breathing problems for many years. His doctor conducted an experiment in 1963 which showed that employee's breathing problems were possibly due to exposure to this chemical. Nevertheless, the court found that plaintiff was not estopped from bringing suit twenty-one years after this experiment because the statute of limitations was not triggered until employee was diagnosed with isocyanate asthma in 1983.

In the wake of strong Missouri cases which support employee's arguments, employer cites *Johnson v. Norfolk & Western Railway Co.,* 836 S.W.2d 83 (Mo.App.E.D.1992) to support its case. In *Johnson,* the court found that an employee who was experiencing signs of hearing loss and complaining about excessive work noise at safety meetings for many years prior to his retirement was barred from bringing suit against the railroad. The court affirmed the dismissal of the case noting that to allow a plaintiff to "'unilaterally postpone the running of the statute of limitations by negligently failing to investigate the fact of and cause of his injury' ... would thwart the statute's purpose of encouraging prompt presentations of claims." *Id.* at 86 (quoting *Fries v. Chicago & North-*

*western Trans. Co.,* 909 F.2d 1092, 1096 (7th Cir.1990)). The situation in the case at hand, however, differs from the *Johnson* scenario. In *Johnson,* plaintiff claimed "because of his vanity he chose to ignore his family's complaints concerning his hearing loss and that he was reluctant to accept the fact that he was undergoing a hearing problem." He, therefore, refused to consult a doctor. These types of subjective factors do not excuse the plaintiff's failure to investigate an obvious problem since, as the court noted in *Johnson,* the test to apply for these purposes is of an objective nature. Furthermore, in *Johnson,* the court noted that plaintiff had no reason to suspect his symptoms had any cause other than his employment. Finally, and perhaps most significantly, is the fact that in the case at hand, until a year before plaintiff brought suit, his symptoms would disappear every time he left his work place leading him to believe they were just temporary reactions to the irritants with which he came in contact on a daily basis.

▪▪▪ The statute of limitations serves several functions. It brings an end to stale claims by prohibiting a victim from sitting on a claim until the evidence is no longer existent and witnesses are harder to find, undermining the truth-finding process. It also deters a situation in which an individual continues to work while his/her condition is knowingly deteriorating to the point in which the damage is severe, irreversible and damages are much more costly. At the same time, however, the statute of limitations is not designed to preclude an innocent victim from bringing a claim for relief from injuries that he/she was formerly unaware he/she had sustained and the cause of which were formerly unknown. A review of *Urie, Elmore, Upjohn* and *Johnson* demonstrate it is not enough to suspect a problem and a causal connection to start the statute of limitations ticking; one must either know of the problem and the probable connection or actively ignore a manifest problem which would be apparent to a reasonable person. *See Johnson,* 836 S.W.2d at 87.

▪▪▪ Our review of the case before us reveals there was insufficient evidence to justify a grant of summary judgment under the

circumstances. It is knowledge, and not speculation, which triggers the statute of limitations. Although employee experienced shortness of breath and other symptoms, evidence was not presented which established *as a matter of law* that employee was aware of his condition and its cause beyond the statute of limitations time frame. *See Upjohn,* 851 S.W.2d 646. Employee testified that he believed the symptoms he experienced were merely temporary reactions from exposure to irritants and were similar to symptoms anyone would experience under those circumstances. Employee was exposed to smoke and fumes from spray paint, harsh chemicals and asbestos. It is understandable that this combination would incite a temporary reaction from the average person. Employee testified he did not believe his symptoms were evidence of a slowly manifesting permanent condition. He was informed by his allergist that his working conditions were aggravating his "symptoms". In light of the fact employee suffered from allergies prior to commencing work at the railroad, we do not believe this warning is sufficient to put him on notice, as a matter of law, that his work environment was creating *permanent* damage. At most, it creates a jury question. We also find that Dr. Wilson's testimony, that back in 1986 and 1987 he believed there *might* have been a connection between employee's work and his respiratory problems, lacks the definitiveness required to put employee on notice, especially in light of his later diagnoses that employee's condition "probably [had] no specific cause." Phrases such as "I figured" and "maybe" do not provide sufficient proof to sustain a motion for summary judgment. *Kestner,* 785 S.W.2d at 647.

■ We refuse to abrogate a person's cause of action when it is unclear whether the employee was truly aware of the permanency of the problem. While there is no question employee knew his occupational conditions irritated him when he was at work, in order to find the statute of limitations has expired, we must find employee

was aware he had sustained permanent damage that would not go away when he left his job site. This court has held that when there is contradictory evidence concerning when an employee became aware of his/her condition, the employee has a right to argue his/her case to the trier of fact. In *Rogers v. Illinois Cent R.R. Co.,* 833 S.W.2d 426 (Mo.App.E.D. 1992), plaintiff worked for the railroad for seventeen years and experienced hearing loss as a result of the loud noises to which he was continuously exposed in his employment. His employer gave him a questionnaire to fill out on which plaintiff noted that he began experiencing problems with his hearing seven years before he brought the action. Based on employee's response to the questionnaire, the trial court granted the railroad's motion for summary judgment. Plaintiff appealed, however, asserting his responses on the questionnaire were not facts within his knowledge because at the time he filled out the questionnaire, he had never been diagnosed as suffering from a hearing loss and was merely assuming this had occurred. *Id.* at 429. This court reversed the grant of summary judgment and remanded the case for trial finding that because plaintiff's interrogatory answers and affidavits rebutted his responses to the questionnaire, a material issue of fact existed and the case should be decided by the trier of fact. *Id.* at 429–430. As was the situation in *Rogers,* we have before us today conflicting evidence concerning when employee actually knew of his injury and its probable cause. Accordingly, we reverse the decision of the trial court and remand this case for trial.

■ As to employee's claim that the trial court erred when it granted summary judgment on employee's claim for aggravation of injury, Missouri courts have held aggravation claims may not be used to circumvent the statute of limitations in a time-barred action for the original injury. *See Alexander v. Missouri Pacific R.R. Co.,* 827 S.W.2d 757 (Mo.App.E.D.1992); *Lloyd v. Missouri Pacific R.R. Co.,* 832 S.W.2d 310 (Mo.App.E.D.1992).[2] This is because any

---

**2.** In *Kichline v. Consolidated Rail Corp.* 800 F.2d 356 (3rd Cir.1986) the third circuit appeared to recognize the possibility of an aggravation tort as

an alternative claim when the statute of limitations has otherwise run. Missouri courts howev-

claim for aggravation is equivalent to a claim for the original injury for purposes of determining whether the action is time-barred. *Lloyd,* 832 S.W.2d at 313. In the case at hand, however, we have held that employee's action is not time-barred since we cannot say as a matter of law employee was aware he was sustaining permanent medical injuries and they were related to his occupational environment. As long as the aggravation claim is not being used to bypass the statute of limitations, the claim is sustainable. *See Wise v. Union Pacific R.R. Co.,* 815 F.2d 55, 58 (8th Cir.1987) (plaintiff who had a preexisting condition or injury is entitled to recover for damages he suffers as a result of the aggravation of injury). In employee's case the aggravation claim is necessary because when employee began working for employer he already suffered from allergies, bronchitis and sinus problems. We, therefore, reverse the trial court's grant of summary judgment as to the aggravation claim.

 Finally, we address employee's claim that the trial court improperly found employee's action for negligent assignment was time-barred. In *Fletcher v. Union Pacific R.R. Co.,* 621 F.2d 902 (8th Cir.1980), the court held that a prima facie case of negligent assignment requires a showing that defendant knew or should have known its assignment exposed the employee to an unreasonable risk of harm. *Id.* at 909. The court was swayed by evidence that despite a physicians' recommendations and the plaintiff's attempts to seek an alternate assignment, the railroad continued to assign the plaintiff to the same work. *Id.* at 908. Employer claims employee failed to satisfy his burden of producing evidence that employer had knowledge the assignment was inappropriate. Employer alleged that sporadic complaints to a supervisor about fumes and dust were insufficient to put an employer on notice and that the initial notice employer received was on February 10, 1993 when employee included the negligent assignment claim in his amended petition. We note that complaints to a supervisor about problems at work, may, under some circumstances, provide sufficient notice to an employer that an

employee is assigned to a task which he/she is unable to safely perform. In the case at hand, when employee informed employer of the problems he was experiencing and recommended employer stock respirators or other protective gear he was originally told to "Go drive a milk truck." Employee then went out on his own accord and found a respiratory protective device and brought it back for employer's inspection. Employer eventually began stocking the device. In its argument that there is insufficient proof the railroad had notice employee was negligently assigned, employer also ignores the fact employee alleges he gave his supervisor a note from Dr. Smith in 1979 which said "odors, fumes, and dust that [employee] encounters at work irritate the sinuses and bronchial tubes, and aggravate his *symptoms,*" a note which recommended utilization of protective gear. Although employer claims employee never gave this letter to his supervisor, a genuine issue of fact exists as to whether this actually occurred and put employer on notice of the situation. *See Rogers v. Illinois Cent. R.R. Co.,* 833 S.W.2d 426. Finally, employer argues that employee's claim fails because he never requested a job transfer. However, it is not always necessary that an employee request a job transfer in order to recover on a negligent assignment claim.

For all of the above-mentioned reasons we reverse the trial court's grant of employer's motion for summary judgment in its entirety and remand this case for further proceedings.

SIMON, P.J., and AHRENS, J., concur.

---

er have declined to follow the Kichline court.

*See Lloyd,* 832 S.W.2d at 313.