KAY M. SHILLING, APPELLANT, V. STAN L. MOORE, APPELLEE.

545 N.W.2d 442

Filed March 29, 1996.   No. S-94-005.

Randall J. Shanks for appellant.

Thomas J. Shomaker and Edward F. Noethe, of Sodoro, Daly & Sodoro, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

Dr. Kay M. Shilling, a psychiatrist, appeals the summary judgment dismissal of her libel lawsuit against Dr. Stan L. Moore, Immanuel Medical Center's psychiatry department chairperson.

In her petition filed in the district court for Douglas County, Shilling alleges that Moore maliciously made a false report to the credentials committee at Immanuel Medical Center (IMC) that stated that Shilling was unfit to perform her duties as an IMC staff physician. Shilling's petition further alleges that the credentials committee recommended to IMC's executive committee that her application for reappointment to IMC's medical staff be denied. She further alleges that IMC's executive committee subsequently recommended the denial of her application for reappointment to IMC's medical staff and denied her further admitting privileges at IMC as of March 31, 1992.

Upon review of the record, we affirm the dismissal of Shilling's lawsuit.

## ASSIGNMENTS OF ERROR

Restated, Shilling claims that summary judgment was improper because genuine issues as to material facts exist concerning whether Moore was immune from liability for defamation under (1) the federal Health Care Quality Improvement Act, 42 U.S.C. § 11101 et seq. (1988 & Supp. V 1993) (HCQIA), and (2) Nebraska law.

## STANDARD OF REVIEW

An appellate court has an obligation to reach conclusions on questions of law independent of the trial court's ruling. *Lincoln Lumber Co. v. Fowler*, 248 Neb. 221, 533 N.W.2d 898 (1995).

Procedural matters are dictated by the law of the forum. *Calvert v. Roberts Dairy Co.*, 242 Neb. 664, 496 N.W.2d 491 (1993). As a result, law of the forum generally governs standard of review of the trial court's summary judgment. See, *Mt. Juneau Enterpr. v. Juneau Empire*, 891 P.2d 829 (Alaska 1995); *Griffin v. Summit Specialties, Inc.*, 622 So. 2d 1299 (Ala. 1993). See, also, *Harter v. Ozark–Kenworth, Inc.*, 904 S.W.2d 317 (Mo. App. 1995); *CSX Transportation v. Franklin Indus.*,

213 Ga. App. 778, 445 S.E.2d 861 (1994); *Billman v. Missouri Pacific R. Co.*, 825 S.W.2d 525 (Tex. App. 1992). However, Congress has mandated a standard of review in 42 U.S.C. § 11112(a) that a professional review action shall be presumed to have met the preceding standards necessary for the protection set out in § 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence.

Courts have held in regard to 42 U.S.C. § 11112(a) that an objective preponderance of the evidence standard applies to summary judgments. See, *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318 (11th Cir. 1994); *Austin v. McNamara*, 979 F.2d 728 (9th Cir. 1992); *Smith v. Our Lady of the Lake Hosp.*, 639 So. 2d 730 (La. 1994). See, also, *Goodwich v. Sinai Hospital*, 103 Md. App. 341, 653 A.2d 541 (1995).

In *Austin v. McNamara*, 979 F.2d at 734, the U.S. Court of Appeals for the Ninth Circuit found that the summary judgment inquiry for actions involving HCQIA is best stated as follows: "Might a reasonable jury, viewing the facts in the best light for [the plaintiff], conclude that [she or] he has shown, by a preponderance of the evidence, that the defendants' actions are outside the scope of [42 U.S.C.] § 11112(a)?" The *Austin* court further found that § 11112(a)'s reasonableness requirements were intended to create an objective standard rather than a subjective good faith standard.

## FACTS

Shilling is a licensed psychiatrist who had been granted staff privileges at IMC in 1984. At all times relevant to Shilling's allegations, Moore was chairperson of the department of psychiatry at IMC. As such, Moore was primarily responsible for monitoring the psychiatrists on IMC's staff.

In or about January 1992, IMC's credentials committee was engaged in a review of Shilling's reapplication for medical staff privileges. IMC's credentials committee requested that Moore make an assessment of Shilling as to the quality and standard of her practice.

On January 28, an IMC psychiatric nursing staff unit manager made a written report to the hospital's quality review

committee, requesting that it review the medical chart of one of Shilling's patients. Shilling had diagnosed the patient as suffering from a bipolar disorder. The psychiatric nursing unit manager stated in her report that all of the medical chart's documentation related to chemical dependence and not psychiatric problems. The report expressed concern that there was no documentation to support a bipolar diagnosis. As a result of this request for review, IMC's utilization review committee assigned a physician peer reviewer to examine the patient's chart.

On January 31, the physician peer reviewer wrote in his report that "none of the 'issues' documented by the physician indicate a need for inpatient care . . . [patient] care is very unusual, there is a strong question of appropriate [diagnosis] *and this chart constitutes another in a great many cases of questionable practice of this M.D.*" (Emphasis supplied.)

At Shilling's request, the case was reviewed again by another physician on February 3 who concluded that the primary problem was substance abuse and that the patient was not psychotic. Shilling then requested that a third physician review the case. That physician, in a report dated February 4, wrote, "[r]efer to dept. chair . . . take provider off case . . . personality disorder and substance abuse . . . *care appears incompetent.*" (Emphasis supplied.)

IMC's utilization review committee then asked Moore to review the care being provided to the patient. Moore contacted Shilling on February 6 to notify her that he would be performing an independent medical evaluation of the patient. After examining the patient on February 6, Moore wrote in the patient's medical chart "[*m*]*ental status reveals no evidence of psychosis. Does not meet diagnostic criteria for bipolar Disorder . . . Will discuss* [*with*] *attending M.D.*" (Emphasis supplied.) Immediately after making this entry, Moore spoke with Shilling regarding his conclusion.

On February 9, Moore and Shilling spoke via telephone. In an affidavit submitted to the trial court, Shilling testified that during the February 9 phone conversation, Moore told her that she had no patient care problems, but that she would be placed

on concurrent case review because Moore did not like her attitude.

In contrast, Moore stated in his deposition that during that phone conversation,

> I attempted to explain at some length my concern over the past year of quality review and utilization review concerns and what I perceived as her inappropriate response to feedback received from U.R. and Q.R., more specifically I informed her she could use this feedback in a very positive manner to improve her practice . . . .

On February 19, Moore submitted his assessment report concerning Shilling that had been previously requested by the credentials committee as part of its review of Shilling's application to renew her staff privileges at IMC. There is nothing in the record to reflect, nor does Shilling allege, that Moore revealed his report to any other person or body other than IMC's credentials committee.

Moore's report reflects that *in his opinion*, Shilling did not possess the necessary skills and experience to perform appropriately and was not qualified for the staff privileges requested. Moore reported that "[i]n reviewing the past year's [utilization review] and [quality review] record, concerns ha[d] been expressed regarding the ability to diagnose accurately, use psychopharmacologic agents appropriately and document patient care accurately in the medical record."

In his answer to Shilling's petition, Moore admitted that on March 23, IMC's executive committee recommended denial of Shilling's application for reappointment to the medical staff and denied her admitting privileges at IMC as of March 31.

Moore filed a motion for summary judgment, which was granted, and Shilling's petition was dismissed. Shilling timely appealed that disposition to the Nebraska Court of Appeals. In order to control the dockets of the two appellate courts, we removed this appeal from the Court of Appeals' docket to our own.

## ANALYSIS

Congress enacted HCQIA to provide for effective peer review and interstate monitoring of incompetent physicians and

granted qualified immunity from damages for those who participate in peer review activities. See 42 U.S.C. § 11101. In furtherance of the latter goal, HCQIA provides that if a "professional review action" (as defined in HCQIA) meets certain due process and fairness requirements, see 42 U.S.C. § 11112, then

> [n]otwithstanding any other provision of law, no person (whether as a witness or otherwise) providing information to a professional review body regarding the competence or professional conduct of a physician shall be held, by reason of having provided such information, to be liable in damages under any law of the United States or of any State (or political subdivision thereof) unless such information is false and the person providing it knew that such information was false.

42 U.S.C. § 11111(a)(2). HCQIA then provides:

> For purposes of the protection set forth in section 11111(a) of this title, a professional review action must be taken—
>
> (1) in the reasonable belief that the action was in the furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).
>
> A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence.

42 U.S.C. § 11112(a).

On appeal, Shilling contends that Moore's assessment report to the credentials committee was false and that he knew it was false. As evidence of this, Shilling claims there was a discrepancy between what Moore allegedly told her in their February 9 telephone conversation and what he subsequently wrote in his assessment report submitted to IMC's credentials committee. In sum, Shilling argues that because Moore allegedly told her in their February 9 telephone conversation that she had no patient care problems, and later indicated in his report that concerns had been expressed regarding Shilling's ability to diagnose accurately, use psychopharmacologic agents appropriately, and document patient care accurately in the medical record, a factual dispute is created as to whether Moore's report was false and whether he knew it was false.

Whether a material issue of fact is raised by the above alleged discrepancy is immaterial to our review. In order to overcome HCQIA's rebuttable presumption of immunity, Shilling must show, by a preponderance of the evidence, that Moore's assessment report was false and that he knew it was false. See, 42 U.S.C. §§ 11111(a)(2) and 11112(a); *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318 (11th Cir. 1994); *Austin v. McNamara*, 979 F.2d 728 (9th Cir. 1992).

The record reflects that toward the latter part of January 1992, there was a sharp disagreement and a prolonged professional exchange between Shilling and several other doctors over the proper diagnosis and treatment of a particular patient. Four different reviewers, including Moore, disagreed with Shilling's diagnosis and/or treatment of the patient. All of the reviewers' findings and their concerns, including Moore's, were communicated to Shilling prior to the February 9 telephone conversation.

Moore's February 19 report reflects concerns raised by Shilling's peer reviewers regarding the above-mentioned patient. Moore stated that to his knowledge, Shilling "has been unable to work in a consistently cooperative fashion with nursing personnel, Utilization Review and Quality Review [personnel]." Moore stated that Shilling had been the subject of complaints from physicians, nurses, and other employees. *He also stated that Shilling had not been the subject of complaints*

*by patients or medical staff committees.* Moore, when asked whether Shilling had failed to comply with applicable bylaws and policies of IMC, stated that Shilling "has been unable to be in compliance with Article 111, Section G which requires that every practitioner 'must demonstrate the ability to work harmoniously with others in a manner consistent with quality medical care and the orderly operation of the hospital and medical staff.' "

In response to the question, "In your opinion, is there any privilege currently held by the physician for which [she] does not possess the necessary skills and experience to perform appropriately," Moore answered "yes." The form then read: "If yes, what course of action do you recommend?" Moore's answer in full was: "In reviewing the past year's UR and QR record, concerns have been expressed regarding the ability to diagnose accurately, use psychopharmacological agents appropriately and document patient care accurately in the medical record." Moore also evaluated Shilling's professional judgment; clinical competence; and cooperativeness, ability to work with others, as "unfavorable." He reported that Shilling was not qualified for the privileges she requested based upon "extensive and excessive Utilization Review, Quality Review and nursing concerns which are inconsistent with the standard of medical practice at Immanuel Medical Center." Moore reported that Shilling's basic medical knowledge, technical skill, medical record currency, and participation in medical staff affairs were "favorable." Moore stated that he had reviewed Shilling's "QA file" and "National Practitioner Data Bank Information."

Even if one were to assume that Moore had, in fact, stated in the February 9 telephone conversation that Shilling had no patient care problems, the discrepancy with Moore's subsequent report to the credentials committee created by that assumption is still not sufficient to show, by a preponderance of the evidence, that Moore's assessment report was false and that he knew it was false. Nor would this constitute sufficient evidence to show that Moore's comments in his assessment and report were not provided "in the reasonable belief that the action was in the furtherance of quality health care." See 42 U.S.C. § 11112(a).

Even if all of the evidence is viewed most favorably toward Shilling, the bare allegation that Moore once stated in the February 9 telephone conversation that Shilling had no patient care problems simply does not meet the evidentiary burden required to overcome the shield of immunity that HCQIA provides to medical peer reviewers.

As to Shilling's second assignment of error, Neb. Rev. Stat. §§ 71-2047 and 71-2048 (Reissue 1990), in sum, provide that all communications to medical staff or utilization review committees are privileged. HCQIA and the holdings in *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318 (11th Cir. 1994), and *Austin v. McNamara*, 979 F.2d 728 (9th Cir. 1992), afford greater protection in defamation actions to persons and medical peer reviewers than does state law. A federal statute preempts state law which is less restrictive than federal law. See *Ferry v. Ferry*, 201 Neb. 595, 271 N.W.2d 450 (1978). See, also, *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533 (1992). Accordingly, we need not address Shilling's second assignment of error.

We affirm the summary judgment of the district court dismissing Shilling's petition.

AFFIRMED.