DAVID W. CRAFTON, APPELLANT, V.
UNION PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLEE.
DONALD R. BIMES, APPELLANT, V.
UNION PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLEE.
585 N.W. 2d 115

Filed October 20, 1998.   Nos. A-97-559, A-97-562.

James D. McFarland and Robert W. Bosslet, Jr., for appellants.

Richard J. Hautzinger and Anne Marie O'Brien for appellee.

IRWIN, Chief Judge, and HANNON and INBODY, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

These appeals involve Federal Employers' Liability Act (FELA) cases arising out of carpal tunnel syndrome (CTS) injuries sustained by Donald R. Bimes and David W. Crafton (together, the plaintiffs), which they allege they sustained as a result of their employment with the Union Pacific Railroad Company (UP). The plaintiffs each filed an action in the district court for Douglas County, claiming that UP negligently assigned him to work for which he was unsuited. In each case, the district court granted UP's motion for summary judgment and dismissed the case. The plaintiffs timely appealed to this court. Upon a motion to consolidate filed by UP, the cases were consolidated for the purposes of appeal. For the reasons stated below, we reverse, and remand for further proceedings.

## II. FACTUAL BACKGROUND

### 1. BIMES' CASE

Bimes has been employed with UP since August 1973. In approximately 1989, he became a crew caller. His duties included keyboarding. In 1991, Bimes became a timekeeper, which also included keyboarding duties. His typing usually consisted of pressing one, two, or three different keys at a time to call up formatted computer screens pertaining to each crew member and then typing in lines of information. Bimes began to experience pain and tingling in his hands in approximately March 1993. He was ultimately diagnosed with CTS. When conservative treatment did not remedy the problem, surgeries were performed. Bimes did not work from February 24, 1995, until May 21, 1996. On January 16, 1996, Dr. Jerome Bashara, an orthopedic surgeon who was Bimes' treating physician, recommended that he not return to any repetitive activities and be retrained vocationally. According to Bashara, Bimes returned to work against Bashara's recommendation.

When Bimes returned to work on May 21, 1996, he was not experiencing any of the symptoms he attributed to CTS. For approximately the first 1½ months after his return, Bimes was

assigned to perform duties that did not involve keyboarding. During this time, his hands became tired but he did not experience CTS symptoms. By mid-August, Bimes was eased back into a full-time timekeeper position, which included approximately 2½ to 3 hours of keyboarding in each 8-hour shift. After returning to the timekeeper job, Bimes' CTS symptoms returned. Bimes told his supervisor of his problems. His supervisor did not respond to or address Bimes' concerns. Pursuant to Bashara's recommendations, Bimes stopped working on October 23.

## 2. CRAFTON'S CASE

Crafton was also a longtime employee of UP. In 1988, he began working as a crew dispatcher. According to Crafton, his duties include keyboarding for an average of approximately 3 to 4 hours intermittently over the course of each shift. Crafton began to experience pain in his hands and wrists in December 1991. He sought treatment from Dr. Peter Cimino, who told him the symptoms were related to work. At some point in November or December 1993, Nancy Hill, a casualty management representative at UP, requested that Crafton consult Dr. Richard P. Murphy. Murphy diagnosed CTS on the left side. In approximately May 1994, Murphy restricted Crafton to typing only 5 to 15 minutes per hour. In October 1994, Crafton was diagnosed with CTS on the right side.

Crafton did not work from January to November 1994. During this time, Crafton's symptoms lessened when he was not typing. According to Crafton, at Hill's request he attempted to type during the period he was not working. However, any typing would cause him to experience CTS symptoms. In October 1994, Murphy changed his restriction to 20 to 30 minutes of typing per hour and released him to return to work.

Crafton returned to work on November 1, 1994. Initially, he was in training. When he returned to a crew dispatcher position, which included keyboarding as detailed above, he immediately began to experience discomfort on his left side. When he informed his supervisor, his supervisor would relieve him for that shift but Crafton would have to return to work for his next shift. Crafton returned to see Murphy in December 1994 and

January 1995, at which times he informed Murphy of his problems at work. Murphy recommended that Crafton continue working. In January, Crafton went to Bashara for a second opinion. Bashara recommended that Crafton abstain from any repetitive movement. Crafton returned to work in June but pursuant to Bashara's orders has not worked since the end of July 1995.

## III. PROCEDURAL BACKGROUND

The plaintiffs each commenced a FELA action against UP in district court. UP filed a motion for summary judgment in each case. At the hearing on the motion in each case, the evidence offered included Bimes' or Crafton's deposition, Bashara's deposition, and an affidavit and work study of Dr. Steven F. Wiker, a professor in the fields of "ergonomics, human factors and safety engineering." The district courts found Bashara's depositions to be inadmissible for the reason that they lacked proper foundation. The courts also concluded that the plaintiffs had not presented evidence to raise issues of fact to support their theory of negligent assignment. Therefore, in each case, the district court granted UP's motion for summary judgment and dismissed the case. Timely appeals followed.

## IV. ASSIGNMENTS OF ERROR

Generally, the plaintiffs assign that the district courts erred in granting summary judgment. In particular, their assigned errors and supporting arguments may be restated as claiming that the district courts misapplied the summary judgment standard, misconstrued the doctrine of negligent assignment, and erred in determining Bashara's deposition in each case was inadmissible.

## V. ANALYSIS

### 1. STANDARD OF REVIEW

Courts of the United States and courts of the several states have concurrent jurisdiction over claims controlled by FELA. *Chapman v. Union Pacific Railroad*, 237 Neb. 617, 467 N.W.2d 388 (1991). See 45 U.S.C. § 56 (1994). In disposing of a claim controlled by FELA, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues concerning a claim under FELA are determined by the provisions of the act

and interpretative decisions of the federal courts construing FELA. *Chapman, supra*; *Kusek v. Burlington Northern RR. Co.*, 4 Neb. App. 924, 552 N.W.2d 778 (1996). See, generally, Restatement (Second) of Conflict of Laws § 122 (1971). The Nebraska Supreme Court has stated that procedural matters are dictated by the law of the forum. *Shilling v. Moore*, 249 Neb. 704, 545 N.W.2d 442 (1996).

Whether a party is entitled to summary judgment is a matter of procedure controlled by the law of the forum. *Id.* In Nebraska, summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998). On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Kime v. Hobbs*, 252 Neb. 407, 562 N.W.2d 705 (1997); *Melick v. Schmidt*, 251 Neb. 372, 557 N.W.2d 645 (1997). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Schade v. County of Cheyenne*, 254 Neb. 228, 575 N.W.2d 622 (1998).

## 2. ADMISSIBILITY OF DEPOSITIONS

At the outset, we address whether the district courts erred in determining that the deposition of Bashara offered in each case was inadmissible. We note that the depositions were offered by UP in each case and that no objections were raised as to the admissibility of the depositions. The courts concluded sua sponte that Bashara lacked a foundational base for his causation opinions. In Bimes' case, the district court stated that the particular grounds for its conclusion were that Bashara was unaware of the particulars about Bimes' job, that Bashara did not indicate that his opinion was "accepted by the relevant scientific community," and that Bashara did not rule out other potential causes for Bimes' CTS.

The cases cited by the court in Bimes' case in support of its determinations that Bashara's deposition was inadmissible and that summary judgment was proper are all cases in which the admissibility of evidence was controlled by the Federal Rules of Evidence. The federal courts have a standard different from Nebraska's for determining the admissibility of expert testimony. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (redefining standard for admission of expert testimony in federal courts to provide that pursuant to Fed. R. Evid. 702, expert testimony may be admitted if scientific or specialized knowledge will assist trier of fact and if witness is properly qualified as expert). The Nebraska Supreme Court has refused to adopt the above *Daubert* standard and has reaffirmed the standard set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), which provides for a general acceptance requirement for the admission of expert testimony. See *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994). Therefore, the cases cited by the court in Bimes' case are not persuasive authority in Nebraska.

(a) Relevant Law

Generally, the admissibility of evidence is a procedural matter governed by the law of the forum. See 16 Am. Jur. 2d *Conflict of Laws* § 168 (1998); Restatement (Second) of Conflict of Laws § 138 (1971); 15A C.J.S. *Conflict of Laws* § 22(9) and (10) (1967). In Nebraska, a lower court's ruling in receiving or excluding an expert's opinion which is otherwise relevant will be reversed only when there is an abuse of discretion. *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998); *Mahoney v. Nebraska Methodist Hosp.*, 251 Neb. 841, 560 N.W.2d 451 (1997).

In determining whether an expert's testimony is admissible, a court considers four preliminary and interrelated questions: (1) whether the witness qualifies as an expert pursuant to Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995); (2) whether the expert's testimony is relevant; (3) whether the expert's testimony assists the trier of fact to understand the evidence or determine a controverted factual issue; and (4) whether the expert's testimony, even though relevant and admissible,

should be excluded under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), because its probative value is substantially outweighed by the danger of unfair prejudice or other considerations. *Childers v. Phelps County*, 252 Neb. 945, 568 N.W.2d 463 (1997); *Robinson v. Bleicher*, 251 Neb. 752, 559 N.W.2d 473 (1997).

### (b) Application to Facts

Neither the parties nor the district courts dispute Bashara's qualifications as an orthopedic surgeon with many years' experience diagnosing and treating CTS. There is also no contention that the probative value of Bashara's opinion is outweighed by the danger of unfair prejudice. The courts' concern as to the admissibility of Bashara's opinion was whether it was of probative value and thus relevant.

Expert testimony should not be received if it appears that the witness is not in possession of such facts as will enable the expert to express a reasonably accurate conclusion, and where the opinion is based on facts shown not to be true, the opinion lacks probative value. *Childers, supra*; *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995).

Upon our review of the record in light of our standard of review for summary judgment, we conclude Bashara was in possession of such facts as to enable him to express a reasonably accurate conclusion as to causation of the plaintiffs' injuries. In making this determination, we analyze his opinion, the basis of his opinion, and the facts he possessed in the light most favorable to the plaintiffs and giving the plaintiffs all reasonable inferences deducible from the evidence. See *Schade v. County of Cheyenne*, 254 Neb. 228, 575 N.W.2d 622 (1998). Bashara testified that he had extensive knowledge and experience diagnosing and treating CTS and knowledge of the causes and results of CTS as it relates to certain occupations. He discussed how every individual has a different point at which repetitive motion may cause CTS. Bashara testified that keyboarding is an example of repetitive motion and can, therefore, cause CTS. According to Bashara, medical literature supports his opinion, including OSHA guidelines regarding ergonomic program management. Bashara testified that each of the plain-

tiffs had informed him that he did intermittent keyboarding at work. Bashara testified that he had knowledge of and had observed people keyboarding. Bashara's ultimate opinion was that the plaintiffs' jobs, which included keyboarding, caused their CTS injuries. Bashara rendered his causation opinions based on patient history; review of medical records, including nerve conduction tests; his 22 years of clinical experience; and the medical literature. We conclude, for summary judgment purposes, that Bashara's testimony was based on facts as would enable him to express a reasonably accurate conclusion.

It is true that Bashara did not rule out other causes for the plaintiffs' CTS injuries. However, as will be discussed at more length below, a plaintiff need only prove that his or her employer's negligence was *a proximate cause* of his or her injury in order to succeed in a FELA action. See *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 77 S. Ct. 443, 1 L. Ed. 2d 493 (1957). As a result, Bashara was not required to rule out other potential causes of injury. Bashara's testimony certainly provided that the plaintiffs' duties at work were a cause of their injuries.

We also note that Bashara's opinion is not couched in the "magic words" that it was made within a reasonable degree of medical certainty. Medical testimony must be sufficiently definite and certain that a conclusion can be drawn that there was a causal connection between the accident and the disability. *Shahan v. Hilker*, 241 Neb. 482, 488 N.W.2d 577 (1992). However, "[a] medical expert's testimony need not be couched in the magic words ' "reasonable degree of medical certainty or a reasonable probability." ' " *Id.* at 486, 488 N.W.2d at 580. In *Shahan*, 241 Neb. at 486, 488 N.W.2d at 580, the Supreme Court held that a doctor's response that it " 'would be my opinion that it was the result of the effect of the medication, that he sensed no pain' " to a question as to what caused a fall was sufficiently definite and certain to present a question for the fact finder as to causation. Considered as a whole, we conclude, for summary judgment purposes, that Bashara's testimony was also sufficiently definite and certain to present an issue of material fact as to causation.

In summary, we conclude that Bashara's testimony had a sufficient factual basis and was sufficiently certain. His opinion

also had probative value. Finally, Bashara's depositions established that he was sufficiently qualified as an expert. For these reasons, we conclude that the district courts abused their discretion in excluding Bashara's depositions for summary judgment purposes.

### 3. LIABILITY UNDER FELA

Under FELA, railroad companies are liable in damages to any employee who suffers injury due to the railroad's negligence. 45 U.S.C. § 51 (1994). To recover under FELA, the plaintiffs must prove the common-law elements of negligence, including duty, breach, foreseeability, and causation. *Aparicio v. Norfolk & Western Ry. Co.*, 84 F.3d 803 (6th Cir. 1996); *Fulk v. Illinois Cent. R. Co.*, 22 F.3d 120 (7th Cir. 1994). Under FELA, a railroad has a duty to provide employees (1) a reasonably safe workplace, (2) safe equipment, (3) proper training, and (4) suitable methods to perform the assigned work. *Aparicio, supra*; *Dukes v. Illinois Cent. R. Co.*, 934 F. Supp. 939 (N.D. Ill. 1996); *Zarecki v. National RR. Passenger Corp.*, 914 F. Supp. 1566 (N.D. Ill. 1996).

The quantum of evidence required to establish liability in a FELA action is lower than that required in an ordinary negligence action. *Fulk, supra*. The common-law standard of proximate cause is not applicable to FELA. *Crane v. Cedar Rapids & I. C. R. Co.*, 395 U.S. 164, 89 S. Ct. 1706, 23 L. Ed. 2d 176 (1969). The U.S. Supreme Court has described the test for causation under FELA as "whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." *Rogers*, 352 U.S. at 506.

### 4. NEGLIGENT ASSIGNMENT

The parties agree that the theory upon which the plaintiffs proceeded was a theory of negligent assignment under FELA. Under this theory, UP has a duty to assign employees to work for which they are reasonably suited. A railroad breaches that duty if it negligently assigns an employee to perform work beyond his or her capacity. *Fletcher v. Union Pac. R. Co.*, 621 F.2d 902 (1980); *Massimiani v. Monongahela Railway Co.*, 339 F. Supp. 832 (W.D. Pa. 1972). The railroad is negligent if it

knew or should have known that its assignment exposed the employee to an unreasonable risk of harm. *Fletcher, supra.* Whether the assignment is negligent is a question of fact. *Id.*

### (a) Notice to Railroad

The issue of whether the railroad breaches its duty to assign an employee to suitable work may be characterized as one of notice. Federal courts have held that notice of an employee's physical condition to any of the employee's supervisors constitutes notice to the railroad itself. *Empey v. Grand Trunk Western R. Co.*, 710 F. Supp. 653 (E.D. Mich. 1987); *Dunn v. Conemaugh & Black Lick Railroad*, 267 F.2d 571 (3d Cir. 1959). Complaints to a supervisor about problems at work may provide sufficient notice to an employer that an employee is assigned to a task which he or she is unable to safely perform. *Reasons v. Union Pacific R. Co.*, 886 S.W.2d 104 (Mo. App. 1994).

In the case before us, the record, viewed in the light most favorable to the plaintiffs, shows that UP was aware that the plaintiffs had sustained CTS injuries and had been unable to work for a period of time due to these injuries. During the periods of time when the plaintiffs were not working, their symptoms resolved or lessened. Bimes returned to his old job against Bashara's recommendations. Crafton returned to work when Murphy released him to return to work with the restriction that he only type 20 to 30 minutes per hour. Thereafter, the plaintiffs each began to have recurrent CTS symptoms of which they informed their respective supervisors. Bimes' supervisor did not respond to or address Bimes' concerns. Crafton's supervisor would relieve him for the remainder of the particular shift but Crafton would have to report to work for his next shift. Following their return to work and the onset of CTS symptoms, the plaintiffs consulted Bashara, who removed them from work.

The evidence establishes an issue of material fact on the issue of UP's negligence. There is evidence that after leaves of absence due to CTS injuries, the plaintiffs complained to their supervisors about their pain when they returned to work that involved keyboarding. The evidence and inferences therefrom raise a question regarding whether UP had notice and knew or

should have known that the plaintiffs were unfit to perform the keyboarding tasks to which they were assigned.

### (b) Causation

Next, we address whether an issue of material fact exists on the issue of causation. As discussed above, proof of causation under FELA requires only proof that the employer's negligence played any part, even the slightest, in producing the injury. See *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 77 S. Ct. 443, 1 L. Ed. 2d 493 (1957).

We concluded above that Bashara's deposition testimony was admissible evidence of causation. In addition, based upon the plaintiffs' testimony, their CTS symptoms improved during the periods of time they were off work in response to rest and treatment. However, their symptoms returned each time they returned to work that included keyboarding. This testimony alone raises a genuine issue of fact regarding whether UP's assigning the plaintiffs to work that included keyboarding played a part in causing their present condition. See *Fletcher v. Union Pac. R. Co.*, 621 F.2d 902 (1980) (holding that causation was sufficiently proved where plaintiff's back condition improved with rest and flared up when he returned to work as section hand).

### (c) Foreseeability

There is also sufficient evidence on the issue of foreseeability. The plaintiffs' history, of which UP had knowledge, which includes prior CTS problems related to work, the resolution of symptoms with time off, and the return of symptoms with a return to work, also creates an issue of material fact as to whether it was reasonably foreseeable that UP's assignment of the plaintiffs to keyboarding duties would result in injury.

### (d) Damages

The plaintiffs' testimony provided evidence that they had sustained damages as a result of being assigned to work involving keyboarding. Such damages include the recurrence of the CTS injuries.

### (e) Resolution

We conclude that the evidence offered at the summary judgment hearings presented genuine issues of material fact on the

elements of duty, breach, causation, damage, and foreseeability, as is necessary to proceed on a FELA case in the face of a defendant's motion for summary judgment. Therefore, we conclude that in each case, the district court erred in granting UP's motion for summary judgment and dismissing the petition of Bimes or Crafton.

## VI. CONCLUSION

We conclude that the district courts abused their discretion in excluding the deposition testimony of Bashara for the purposes of UP's summary judgment motions. We also conclude that in each case, the district court erred in granting UP's motion for summary judgment. Therefore, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.