In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3557

ROBERT MCBRIDE,

*Plaintiff-Appellee*,

*v.*

CSX TRANSPORTATION, INC.,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:06-cv-01017-JPG-CJP—**J. Phil Gilbert,** *Judge*.

ARGUED MAY 29, 2009—DECIDED MARCH 16, 2010

Before RIPPLE, ROVNER and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Robert McBride instituted this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, seeking compensation for an injury that he sustained while performing switching operations for his employer, CSX Transportation, Inc. ("CSX"). A jury returned a verdict in Mr. McBride's favor, and the district court entered judgment on the jury's verdict. CSX appealed, and, for the reasons set

forth in this opinion, we now affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

CSX operates an interstate system of railroads. In addition to transporting freight over long distances, it makes "local" runs; that is, it picks up individual rail cars for long-distance transportation or delivers cars to their final destinations. The process of adding or removing cars during these local runs is called "switching." When performing switching operations, engineers are required to start and stop more frequently than when transporting freight over long distances.

Trains use multiple brake systems in slowing to a stop. The automatic brake slows the cars of the train; a separate "independent brake" slows the locomotives. CSX explains the operation of the braking systems in this way:

> The automatic brake normally activates the independent brake as well, and careless use of the former can cause the locomotives to brake too quickly, leading the rear cars to run into those in front. To slow a long train, engineers apply the automatic brake while releasing the independent brake, a maneuver known as "actuating" or "bailing off" the independent brake. Standard practice

is to actuate the independent brake for four seconds per locomotive.

Appellant's Br. 7 (citations omitted). On some heavier, "wide-body" locomotives, the independent brake is actuated by pressing a button on the side of the brake handle, located in front of the engineer's seat. On smaller locomotives, the independent brake is actuated by pushing the handle down with one hand.

Mr. McBride began working for CSX in 1996 as a conductor. In 1999, he became a locomotive engineer, and, from 1999 until 2004, his work consisted primarily of operating a train "from Evansville, Indiana, to Nashville, Tennessee, and back again." Tr. II at 87. However, Mr. McBride was interested in transferring to a different division "where they worked locals," *id.* at 88, because engineers on local runs worked regular, predictable hours and did not often spend nights away from home. Mr. McBride explained that the process of qualifying to operate on a new territory involved being paired with a supervising engineer, who "explains to you as you're running the train where everything is, how the land lays, just the sightings. Explains the whole territory to you." *Id.* at 89.

On April 12, 2004, Mr. McBride went on a qualifying run with supervising engineer, D.J. Baker. The run was going to entail switching in at least four locations. When Mr. McBride saw the train that he would be operating, he was concerned because the two front engines were wide bodies, which were followed by three conventional cabs. Mr. McBride's concern stemmed from the

fact that he never had switched with a wide body cab before. *See id.* at 91. Mr. McBride explained that "[t]hey're not used for switching. From Evansville to Nashville, they are used for coal trains and grain trains. So I was never trained to use one for switching. They are not used for that." *Id*. Mr. McBride expressed this concern to Baker. Baker then went to speak with the yardmaster,[1] but the yardmaster instructed Mr. McBride and Baker to "take them as is." *Id.* at 92. Mr. McBride and Baker complied with this instruction.

Mr. McBride's run began at 10:00 a.m. Mr. McBride testified that, at the first stop, he switched cars for approximately two and one-half to three hours. During this time, Mr. McBride testified, he was using the independent brake and the actuation button "the whole time." *Id.* at 95. At the following two stops, Mr. McBride performed switching operations for two hours and one and one-half hours, respectively. Mr. McBride stated that "[j]ust all day long I had been doing that, grabbing it, pushing the button, grabbing it, pushing the button. That's constant what I was doing." *Id.* at 98.

Mr. McBride was performing switching operations at the final stop, at approximately 8:00 p.m., when the following events took place:

> [T]he conductor told me to release the brakes . . . .
> [W]hen the independent brakes is [sic] applied, its

---

[1] The yardmaster is the manager at the railyard who puts the engines on the trains. *See* Tr. at 90.

> forward. So I was reaching to release them. By then my hands and everything is [sic] numb because I've been doing it for approximately seven or eight hours constantly.
>
> Now I ran my hand into the independent brake, and it felt like—like somebody threw gas on my hand and set it afire.

*Id.* at 99. Mr. McBride screamed and immediately put his hand in his cooler. Baker operated the train during their return to Evansville.

Mr. McBride underwent two surgeries on his hand and extensive physical therapy as a result of his injury. He returned to work in February 2005; however, he continued to experience pain, numbness and some limitations in the use of his hand.

## B. District Court Proceedings

Mr. McBride eventually sued CSX under the FELA for damages resulting from his injury. His theory of negligence was that, because of the configuration of the trains to which he was assigned, the switching operation required constant use of the actuator button. This use caused his hand to fatigue, and, at some point, due to the fatigue, his hand fell and hit the independent brake.

At trial, Mr. McBride proffered the following instruction on causation, which followed in substance the

Seventh Circuit Pattern Instruction.[2] The proffered instruction stated:

> Defendant "caused or contributed to" Plaintiff's injury if Defendant's negligence played a part—no matter how small—in bringing about the injury. The mere fact that an injury occurred does not necessarily mean that the injury was caused by negligence.

R.43 at 13. The pattern instruction cites as its authority *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500 (1957), which, according to the drafters of the instruction, stands for the proposition that a "relaxed standard of causation" applies in FELA cases and that the "common law standard of proximate cause does not apply." Fed. Civ. Jury Instructions of the Seventh Cir. 9.02, cmt. a.

CSX countered with its own causation instruction:

> In order to establish that an injury was caused by the defendant's negligence, the plaintiff must show that (i) the injury resulted "in whole or in part" from the defendant's negligence, and (ii) the defendant's negligence was a proximate cause of the injury.

---

[2] The pattern instruction states:

Defendant "caused or contributed to" Plaintiff's injury if Defendant's negligence played a part—no matter how small—in bringing about the injury. [There can be more than one cause contributing to an injury.] The mere fact that an injury occurred does not necessarily mean that the injury was caused by negligence.

Fed. Civ. Jury Instructions of the Seventh Circuit 9.02.

R.44 at 17. CSX also proffered the following instruction defining "proximate cause":

> When I use the expression "proximate cause," I mean any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it causes the injury.

*Id.* at 14. In support of its proffered instructions, CSX maintained that, in *Norfolk Southern Railway Co. v. Sorrell*, 549 U.S. 158 (2007), the Supreme Court had clarified that *Rogers* had not abandoned common-law proximate cause, and, in fact, proximate cause was the proper standard for causation in cases under the FELA.

The court rejected CSX's proffered instruction. Instead, the court used Mr. McBride's causation instruction, and the jury returned a verdict in Mr. McBride's favor. After unsuccessfully challenging the jury's verdict before the district court, CSX appealed.

## II

### ANALYSIS

The central issue in this case is the proper standard for causation under the FELA. Stated another way, the question we must resolve is whether Section 1 of the FELA, 45 U.S.C. § 51, abrogates the common-law rule of proximate cause. We begin with the applicable statutory command. Section 51 of Title 45 provides in relevant part:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, *for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier*, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51 (emphasis added). The question of causation centers on the meaning of "resulting in whole or in part from the negligence . . . of such carrier." *Id.*

CSX submits that this language does not establish a causation standard. Instead, according to CSX, common-law proximate causation is—and always has been—the proper causation standard under the FELA. Relying heavily on Justice Souter's concurring opinion in *Norfolk Southern Railway v. Sorrell*, 549 U.S. 158 (2007), CSX

maintains that the Supreme Court never has abandoned the holdings of its early FELA cases in which it explicitly held that a plaintiff must establish proximate causation in order to recover under the Act. CSX further claims, also in reliance on Justice Souter's concurrence, that the Supreme Court's decision in *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500 (1957), does not hold to the contrary; according to CSX, *Rogers* did not purport to speak to the question of proximate causation, but only to the question of when a case with multiple causes must be submitted to the jury. CSX acknowledges that other Supreme Court cases, as well as cases in the courts of appeals, have suggested, if not held, that *Rogers* established a relaxed causation standard for FELA cases. It argues, however, that many of these statements are only dicta, but, even if not, they are at odds with both the FELA itself and the methodology the Court has adopted for interpreting that legislation.

Mr. McBride counters that *Rogers* in fact did interpret the FELA as incorporating a relaxed causation standard. He further points out that subsequent Supreme Court and circuit cases, although perhaps not with an optimal degree of discussion or explanation, have applied a relaxed causation standard in FELA cases on the authority of *Rogers*. He maintains that Justice Souter's concurring opinion in *Sorrell* should not be employed to undermine *Rogers* and the wealth of authority that relies upon it.

In answering the question posed to us, we must acknowledge, at the very outset, that we hardly write on a clean slate. The question of the proper causation standard

under the FELA is one with which the courts have grappled since passage of the Act. We look to these decisions to guide our own inquiry. *See Pearson v. Callahan*, 129 S. Ct. 808, 816-17 (2009) ("We recognize that 'considerations of *stare decisis* weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation.'" (quoting *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977))).

## A. Cases Interpreting Causation in § 1

### 1. Early FELA cases

Early FELA cases did not interpret the language "resulting in whole or in part" as altering the common-law requirement of proximate cause.[3] For instance, in *St. Louis*

---

[3] The term "proximate cause" does not easily lend itself to definition. There is not currently, and was not at the time of the FELA's passage, a uniform or generally accepted definition of proximate cause. *See* William H. DeParcq, *A Decade of Progress Under the Federal Employers' Liability Act*, 18 Law & Contemp. Probs. 257, 266-67 (1953) (discussing formulations of proximate cause at common law). Indeed, with respect to the concept of proximate cause, one noted commentator has stated:

> There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion. Nor, despite the manifold attempts which have been made to clarify the subject, is there yet any general agreement to the best approach.

(continued...)

*& San Francisco Railroad Co. v. Conarty*, 238 U.S. 243 (1915), a widow sought damages for the death of her husband, who was caught in a collision of an engine with another car, from which the coupler and drawbar were missing. According to the plaintiff, "[h]ad these appliances been in place they, in one view of the evidence, would have kept the engine and the body of the car sufficiently apart to have prevented the injury." *Id.* at 248. There was no question that the absence of the coupler and the drawbar constituted a violation of a safety rule and, therefore, negligence. Nevertheless, the Court held that there was not a sufficient nexus between the negligence and the injury to send the case to the jury. In reaching this determination, the Court observed:

---

[3] (...continued)

W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 41 at 263 (5th ed. 1984).

In this case, however, CSX maintains that the correct definition of proximate causation is a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Eglsaer v. Scandrett*, 151 F.2d 562, 565-66 (7th Cir. 1945) (observing that the common-law concept of proximate cause meant the "direct, the complete, the responsible, the efficient cause of the injury"); *DeParcq, supra*, at 266-67; *cf. Hemi Group, LLC v. City of New York*, ___ S.Ct. ___, 2010 WL 246151, *5 (Jan. 25, 2010) (stating that "[p]roximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations" and "requires some direct relation between the injury asserted and the injurious conduct alleged" (internal quotation marks and citations omitted)). Thus, we shall employ CSX's definition for purposes of this opinion.

The principal question in the case is whether, at
the time he was injured, the deceased was within
the class of persons for whose benefit the safety ap-
pliance acts required that the car be equipped
with automatic couplers and drawbars of standard
height; or, putting it in another way, whether his
injury was within the evil against which the provi-
sion for such appliances are directed. It is not
claimed, nor could it be, under the evidence, that
the collision was proximately attributable to a
violation of those provisions, but only that, had
they been complied with, it would not have re-
sulted in injury to the deceased. It therefore is
necessary to consider with what purpose couplers
and drawbars of the kind indicated are required,
for where a duty is imposed for the protection
of persons in particular situations or relations a
breach of it which happens to result in injury to
one in an altogether different situation or relation
is not, as to him, actionable.

*Id.* at 249; *see also Lang v. New York Cent. R.R. Co.*, 255 U.S.
455, 461 (1921) (referencing *Conarty* and noting the differ-
ence between proximate cause and "but for" causation). In
sum, the Court required that the injury be a direct or
proximate result of the violation of the safety regulation
(i.e., the negligent act) in order for liability under the
FELA to be imposed.

## 2. *Rogers* and related cases

These early cases never have been overruled explicitly;
however, thirty years later, one commentator observed

that "such cases are definitely inconsistent with later decisions and it is safe to say would not be followed today." William H. DeParcq, *A Decade of Progress Under the Federal Employers' Liability Act*, 18 Law & Contemp. Probs. 257, 268 (1953). Specifically, the author referenced, *inter alia*, the Supreme Court's decision in *Coray v. Southern Pacific Co.*, 335 U.S. 520 (1949).

*Coray* involved an employee who had died as a result of a collision between a freight train and a one-man flat top motorcar. The motorcar was following the train when the train, as a result of a defect in its braking system, stopped suddenly. Although the motorcar was equipped with brakes, both employees on the car were looking backward and did not see that the train in front of them had stopped. The state supreme court affirmed the directed verdict in favor of the defendant on the ground that the violation of the safety rule could not constitute the basis for the company's negligence because its "protection against defective brakes did not extend to employees following and crashing into a train which stopped suddenly because of defective brake appliances." *Id.* at 522. Additionally, the state supreme court held that "the evidence failed to show that the defective appliance was the 'legal' cause of the crash and death of decedent." *Id.* Specifically, the state court "discussed distinctions between 'proximate cause' in the legal sense, deemed a sufficient cause to impose liability, and 'cause' in the 'philosophical sense,' deemed insufficient to impose liability." *Id.* at 523.

The Supreme Court of the United States, however, rejected this distinction; it stated:

The language selected by Congress to fix liability in cases of this kind is simple and direct. Consideration of its meaning by the introduction of dialectical subtleties can serve no useful interpretive purposes. The statute declares that railroads shall be responsible for their employees' deaths "resulting in whole or in part" from defective appliances such as were here maintained. 45 U.S.C. § 51. And to make its purpose crystal clear, Congress has also provided that "no such employee . . . shall be held to have been guilty of contributory negligence in any case" where a violation of the Safety Appliance Act, such as the one here, "contributed to the . . . death of such employee." 45 U.S.C. § 53. . . . These air-brakes were defective; for this reason alone the train suddenly and unexpectedly stopped; a motor track car following at about the same rate of speed and operated by an employee looking in another direction crashed into the train; all of these circumstances were inseparably related to one another in time and space. The jury could have found that decedent's death resulted from any or all of the foregoing circumstances.

*Id.* at 524 (parallel citations omitted); *see also Tiller v. Atl. Coast Line R.R. Co.*, 323 U.S. 574, 578 (1945) (reversing decision of court of appeals, reinstating jury verdict and holding that question whether violation of a safety rule caused the employee's death was one for the jury); *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 33-34 (1944) (same); *cf. Kelley v. S. Pac. Co.*, 419 U.S. 318, 334 (1974)

(Douglas, J., dissenting) (observing that, since the 1939 Amendments to FELA, the "Court has interpreted the Act in the spirit of those amendments" and a "[g]radual liberalization has occurred, and the narrow, technical approach of earlier years has been eschewed").

In reviewing some of these same decisions, our own court has concluded that, over the course of the FELA's history, the concept of "proximate cause" had broadened:

> Perhaps the reconciliation of the earlier accepted, sometimes called the old-fashioned idea, of "proximate cause" as the direct or efficient cause of the accident (as would be the district court's illustration of a shock from a defective electric bell ringer causing injuries and death) in cases where this statute applies, and the conception of proximate cause which now obtains, is to be found in the enlarging phrase of the statute. It provides that if the railroad's negligence "*in part*" results in the injuries or death, liability arises. Under the old concept of proximate cause, that cause must have been direct, the complete, the responsible, the efficient cause of the injury. Contributing and remotely related causes were not sufficient. Now, if the negligence of the railroad has "causal relation,"—if the injury or death resulted "*in part*" from defendants' negligence, there is liability.
>
> The words "in part" have enlarged the field or scope of proximate causes—in these railroad injury cases. These words suggest that there may be a plurality of causes, each of which is sufficient to

permit a jury to assess a liability. If a cause may create liability, even though it be but a partial cause, it would seem that such partial cause may be a producer of a later cause. For instance, the cause may be the first acting cause which sets in motion the second cause which was the immediate, the direct cause of the accident.

*Eglsaer v. Scandrett*, 151 F.2d 562, 565-66 (7th Cir. 1945). Therefore, although more recent decisions still might have employed language of "proximate cause," that term did not have the same teeth.

According to commentators, this new conception of proximate cause "crystallized" in *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500 (1957). *See* Charles H. Traeger, III, *Legal Cause, Proximate Cause, and Comparative Negligence in the FELA*, 18 Stan. L. Rev. 929, 932 (1966). In *Rogers*, a railroad laborer was given the job of burning dead vegetation bordering tracks which ran over "a dirt 'dump' with sloping sides" and a "ballast topping." *Rogers*, 352 U.S. at 501. The foreman had instructed the plaintiff and his co-workers "to stop what they were doing when a train passed and to take positions off the tracks and ties to observe the journals of the passing train for hotboxes." *Id.* at 502. The plaintiff was standing a few feet from an adjacent culvert, watching for hotboxes, "when he became enveloped in smoke and flames" fanned by a passing train. *Id.* The plaintiff covered his face, "retreated quickly back on the culvert and slipped and fell from the top of the culvert, suffering [] serious injuries." *Id.* A jury returned a verdict in favor of the plaintiff,

but the Missouri Supreme Court reversed. On writ of certiorari, the Supreme Court held that "the evidence was sufficient to support the jury finding for the petitioner." *Id.* at 503. It noted that the state supreme court had

> based its reversal upon its finding of an alleged admission by the petitioner that he knew it was his primary duty to watch the fire. From that premise the Missouri court reasoned that petitioner was inattentive to the fire and that the emergency which confronted him "was an emergency brought about by himself."

*Id.* at 503-04 (footnote omitted). The Court then evaluated the state court's rationale:

> We interpret the foregoing to mean that the Missouri court found as a matter of law that the petitioner's conduct was the sole cause of his mishap. But when the petitioner agreed that his primary duty was to watch the fire he did not also say that he was relieved of the duty to stop to watch a passing train for hotboxes. Indeed, no witness testified that the instruction was countermanded. At best, uncertainty as to the fact arises from the petitioner's testimony, and in that circumstance not the court, but the jury, was the tribunal to determine the fact.
>
> We may assume that the jury could properly have reached the court's conclusion. But, as the probative facts also supported with reason the verdict favorable to the petitioner, the decision was exclusively for the jury to make. The jury

was instructed to return a verdict for the respon-
dent if it was found that negligence of the peti-
tioner was the sole cause of his mishap. We must
take it that the verdict was obedient to the
trial judge's charge and that the jury found that
such was not the case but that petitioner's injury
resulted at least in part from the respondent's
negligence.

*Id.* at 504-05 (footnotes omitted).

The Supreme Court also believed that the state court
opinion could be read as basing its reversal on the
ground that "it appeared to the court that the petitioner's
conduct was at least as probable a cause for his mishap
as any negligence of the respondent, and that in such case
there was no case for the jury." *Id.* at 505. The Supreme
Court rejected this idea:

But that would mean that there is no jury question
in actions under this statute, although the em-
ployee's proofs support with reason a verdict in
his favor, unless the judge can say that the jury
may exclude the idea that his injury was due to
causes with which the defendant was not con-
nected, or, stated another way, unless his proofs
are so strong that the jury, on grounds of probabil-
ity, may exclude a conclusion favorable to the
defendant. That is not the governing principle
defining the proof which requires a submission to
the jury in these cases. The Missouri court's opin-
ion implies its view that this is the governing
standard by saying that the proofs must show that

"the injury would not have occurred but for the negligence" of his employer, and that "[t]he test of whether there is causal connection is that, absent the negligent act the injury would not have occurred." *That is language of proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury.*

*Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.* It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. . . . The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or *in part*" to its negligence. (Emphasis added.)

*Id.* at 505-07 (emphasis added; footnotes omitted).

### 3. Recent FELA cases

*Rogers* stopped short of explicitly overruling earlier FELA cases that had spoken in terms of common-law proximate cause. Since *Rogers*, the Supreme Court has not explained in detail how broadly or narrowly *Rogers* should be read by the lower federal courts. Indeed, the Court has discussed *Rogers* infrequently and, in most cases,

without elaboration. In *Sinkler v. Missouri Pacific Railroad Co.*, 356 U.S. 326 (1958), for instance, the Court cited *Rogers* for the proposition that the FELA is "an avowed departure from the rules of the common law." *Id.* at 329. However, other cases have attributed to *Rogers* the idea that the FELA incorporates a causation standard less stringent than proximate cause. In *Crane v. Cedar Rapids & Iowa City Railway Co.*, 395 U.S. 164 (1969), in the course of determining whether the defense of contributory negligence was available to a railroad sued by a nonemployee, the Court observed that a FELA plaintiff "is not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the Act." *Id.* at 166 (quoting 45 U.S.C. § 51 and citing *Rogers*).

More recently, in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994), the Court referenced *Rogers* in addressing the question whether recovery for negligent infliction of emotional distress is available under the FELA. In conducting its analysis of the statutory language and purpose, the Court observed that:

> In order to further FELA's humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers. *Specifically, the statute abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of that of comparative negligence, and prohibited employers from exempting themselves from FELA through contract; a 1939 amendment abolished the assumption of risk defense. See* 45 U.S.C. §§ 51, 53-55.

We have liberally construed FELA to further Congress' remedial goal. For example, we held in *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500 (1957), *that a relaxed standard of causation applies under FELA.* We stated that "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Id.,* at 506. In *Kernan* [*v. American Dredging Co.*, 355 U.S. 426 (1958)], we extended the reach of the principle of negligence *per se* to cover injuries suffered by employees as a result of their employers' statutory violations, even if the injuries sustained were not of a type that the relevant statute sought to prevent. *See id.,* 355 U.S., at 432-436. And in *Urie* [*v. Thompson*, 337 U.S. 163 (1949)], we held that occupational diseases such as silicosis constitute compensable physical injuries under FELA, thereby rejecting the argument that the statute covered only injuries and deaths caused by accidents. *See id.,* 337 U.S., at 181.

*Gottshall*, 512 U.S. at 542-43. Although *Gottshall* characterizes *Rogers* as holding that a relaxed causation standard applies, *Gottshall* also reiterates the importance of common-law principles in interpreting the FELA. The Court explained that:

"[T]he Federal Employers' Liability Act is founded on common-law concepts of negligence and injury, subject to such qualifications as Congress has

imported into those terms," [*Urie v. Thompson*, 337 U.S. 163, 182 (1949)]. Those qualifications, discussed above, are the modification or abrogation of several common-law defenses to liability, including contributory negligence and assumption of risk. *See* 45 U.S.C. §§ 51, 53-55. Only to the extent of these explicit statutory alterations is FELA "an avowed departure from the rules of the common law." *Sinkler v. Missouri Pacific R. Co.*, 356 U.S. 326 (1958). *Thus, although common-law principles are not necessarily dispositive of questions arising under FELA, unless they are expressly rejected in the text of the statute, they are entitled to great weight in our analysis. Cf.* [*Atchison, Topeka & Santa Fe Ry. Co. v.*] *Buell*, 480 U.S. [557, 568 (1987)]. Because FELA is silent on the issue of negligent infliction of emotional distress, common-law principles must play a significant role in our decision.

*Gottshall*, 512 U.S. at 543-44 (emphasis added). Thus, in addition to reaffirming explicitly the common law as an important source in interpreting the Act, the Court stopped short of listing proximate causation among those common-law principles that the FELA had abrogated.

Similarly, our own court never has held, in the wake of *Rogers*, that the concept of proximate cause has been abandoned in its entirety. Nevertheless, we have employed language that strongly suggests that traditional formula-

tions of proximate cause have no role in FELA cases.[4] For instance, in *Lisek v. Norfolk & Western Railway Co.*, 30 F.3d 823 (7th Cir. 1994), we reviewed whether the district court had erred in entering summary judgment for the employer in a FELA case. We stated:

> The FELA is meant to provide a broad remedial framework for railroad workers and, in light of that purpose, is to be liberally construed in their favor. *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 562 (1987); *Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507, 512 (7th Cir. 1993). *Plaintiffs' burden in a FELA action is therefore significantly lighter than it would be in an ordinary negligence case. In a FELA action, the railroad is liable if "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury. . . ."* Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990) (quoting *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)) . . . .

*Id.* at 831-32 (parallel citations omitted; emphasis added). We repeated this language under similar circumstances in *Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739 (7th Cir. 2005):

> Because it is meant to offer broad remedial relief to railroad workers, a plaintiff's burden when

---

[4] Indeed, as discussed *supra* at 15-16, our conception of proximate cause in FELA cases began to change even prior to *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500 (1957).

> suing under the FELA is significantly lighter than
> in an ordinary negligence case. *Lisek v. Norfolk &
> Western Ry. Co.*, 30 F.3d 823, 832 (7th Cir. 1994);
> *Harbin v. Burlington Northern R.R.*, 921 F.2d 129, 131
> (7th Cir. 1990). Indeed, a railroad will be held liable
> where "employer negligence played any part, even
> the slightest, in producing the injury." *Rogers v.
> Missouri Pac. R.R. Co.*, 352 U.S. 500, 506 (1957).

*Holbrook*, 414 F.3d at 741-42 (parallel citations omitted).

The idea that *Rogers* relaxed the proximate cause requirement has been echoed by every other court of appeals. *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 433 (6th Cir. 2003) (observing that "the Supreme Court announced a relaxed test for establishing causation in FELA cases in its landmark decision, *Rogers v. Missouri Pacific Railroad Co.*"); *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 436 (4th Cir. 1999) (quoting *Rogers* and noting the "relaxed" standard of causation under FELA); *Nordgren v. Burlington N. R.R. Co.*, 101 F.3d 1246, 1249 (8th Cir. 1996) (citing *Rogers* for the proposition that "the Court has held that relaxed standards apply under FELA . . . for causation"); *Mullahon v. Union Pac. R.R.*, 64 F.3d 1358, 1363-64 (9th Cir. 1995) (quoting *Rogers* and describing a "relaxed" standard of negligence and causation in FELA cases); *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 267 (3d Cir. 1991) (distinguishing the case before it from a common-law tort case on the ground that "FELA . . . has a more lenient standard for determining negligence and causation"); *Moody v. Main Cent. R.R. Co.*, 823 F.2d 693, 695 (1st Cir. 1987) ("We recognize the considerably relaxed standard

of proof in FELA cases.");[5] *Brooks   v.   Washington*

---

[5] In its reply, CSX acknowledges that five circuits "have either held or stated that a FELA plaintiff need not prove proximate cause," but also states that, "[a]t the same time, at least one circuit . . . ha[s] reached the opposite conclusion." Reply Br. 14-15. For this latter proposition, CSX cites *Boston & Maine Railroad v. Talbert*, 360 F.2d 286, 288 (1st Cir. 1966), and specifically quotes the following language from that case: "[T]he plaintiff has the burden of proving negligence and proximate cause." Placed in context, however, the First Circuit's statement is completely consistent with its later pronouncement that there is a relaxed standard of proof in FELA cases. In *Talbert*, the First Circuit stated:

> Under the statute upon which liability is predicated here plaintiff must show that the injury and death of this employee resulted in whole or in part from the negligence of the defendant railroad. In *New York, New Haven and Hartford Railroad Co. v. Dox,* 249 F.2d 572 (1st Cir. 1957), we held that the plaintiff has the burden of proving negligence and proximate cause. *However, in reviewing the jury's verdict on the question of liability we must be guided by the principles laid down in Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957), a Federal Employer's Liability Act case, in which the Supreme Court said:
>
> > "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with

(continued...)

*Terminal Co.*, 593 F.2d 1285, 1288 (D.C. Cir. 1979) (noting the "liberality" of the FELA causation standard).[6]

Some courts of appeals have been more explicit and have stated that the FELA modified or abandoned common-law proximate cause. *See Nicholson v. Erie R.R. Co.*, 253 F.2d 939, 940 (2d Cir. 1958) (quoting *Rogers* and stating that "[i]t is true that, to impose liability on the defendant, the negligence need not be the proximate cause of the injury" because the FELA "has its own rule of causation"); *Nivens v. St. Louis Sw. Ry. Co.*, 425 F.2d 114, 118 (5th Cir. 1970) (quoting *Rogers* and holding that "the

---

[5]  (...continued)

> reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death."

*Talbert*, 360 F.2d at 288 (footnote and parallel citations omitted; emphasis added).

[6]  Also in its reply, CSX argues that many of these cases simply recite "the general proposition that FELA employs a 'relaxed standard' of causation, without discussing (or even mentioning) proximate cause." Reply Br. 19. We do not believe that the fact that some of these cases fail directly to juxtapose common-law proximate causation with FELA causation reduces their worth. The use of the term "relaxed standard" necessarily suggests the existence of a more stringent standard from which the courts departed.

common-law proximate cause standard is modified, and the employee has a less demanding burden of proving causal relationship"); *Summers v. Missouri Pac. R.R. Sys.*, 132 F.2d 599, 606 (10th Cir. 1997) ("During the first half of this century, it was customary for courts to analyze liability under the FELA in terms of proximate causation. However, the Supreme Court definitively abandoned this approach in [*Rogers*]." (internal citations omitted)).

### 4. *Sorrell*

As we noted earlier, CSX maintains that, regardless of courts' interpretation of *Rogers* up to this point, the Supreme Court's decision in *Norfolk Southern Railway Co. v. Sorrell*, 549 U.S. 158 (2007), and specifically Justice Souter's concurrence in that decision, makes it clear that the holding of *Rogers* is much narrower than courts have perceived. We turn, therefore, to an examination of that case in our search for guidance.

Sorrell, an employee of Norfolk Southern, was driving a dump truck loaded with asphalt when, somehow, Sorrell's truck veered off the road and tipped over. Sorrell, who sustained injuries as a result of the accident, maintained that another Norfolk truck had approached and forced him off the road; the other Norfolk driver, however, maintained that Sorrell simply had driven his truck off the road. Sorrell filed an action in Missouri state court under the FELA. In that action, Sorrell alleged that Norfolk had failed to provide him with a reasonably safe place to work; Norfolk countered that Sorrell's own negligence caused the accident.

At trial, Sorrell proposed an instruction that required Norfolk Southern to establish that his negligence "'directly contributed to cause' the injury, while allowing a finding of railroad negligence if the railroad was negligent and its negligence contributed 'in whole or in part' to the injury." *Sorrell*, 549 U.S. at 161 (quoting Mo. Approved Jury Instr., Civ., No. 32.07(B) & No. 24.01, respectively). Norfolk Southern objected to the instruction "on the ground that it provided a 'different' and 'much more exacting' standard for causation than that applicable with respect to the railroad's negligence under the Missouri instructions.'" *Id.* The trial court overruled the objection, a jury returned a verdict in Sorrell's favor, and Norfolk Southern was unsuccessful in obtaining post-trial relief from the state courts.

Norfolk Southern then filed a petition for certiorari that raised the following question: "[W]hether the Missouri courts erred in determining that the causation standard for employee *contributory negligence* under [FELA] differs from the causation standard for railroad *negligence*." *Id.* at 162 (internal citations and quotation marks omitted; emphasis and alteration in original). However, in its briefing before the Court, Norfolk

> attempted to expand the question presented to encompass *what* the standard of causation under FELA should be, not simply whether the standard should be the same for railroad negligence and employee contributory negligence. In particular, Norfolk contends that the proximate cause standard reflected in the Missouri instruction for

> employee contributory negligence should apply
> to the railroad's negligence as well.

*Id.* at 163. Sorrell raised both substantive and procedural objections to Norfolk Southern's efforts. Sorrell first argued that the Court had settled the issue of the proper standard of causation in *Rogers.* Procedurally, Sorrell maintained, the Court had granted certiorari only to determine whether the FELA incorporated different standards of negligence for employee and railroad liability. As well, continued Sorrell, Norfolk's position was contrary to that which it had taken in the Missouri courts, where it had argued that the more lenient standard articulated in *Rogers* should be applied both to railroads and to employees.

The Court declined the invitation to enlarge the question before it; it explained:

> We agree with Sorrell that we should stick to the question on which certiorari was sought and granted. We are typically reluctant to permit parties to smuggle additional questions into a case before us after the grant of certiorari. Although Norfolk is doubtless correct that we could consider the question of what standard applies as anterior to the question whether the standards may differ, the issue of the substantive content of the causation standard is significant enough that we prefer not to address it when it has not been fully presented. We also agree with Sorrell that it would be unfair at this point to allow Norfolk to switch gears and seek a ruling from us that the standard should be proximate cause across the board.

What Norfolk *did* argue throughout is that the instructions, when given together, impermissibly created different standards of causation. It chose to present in its petition for certiorari the more limited question whether the courts below erred in applying standards that differ. That is the question on which we granted certiorari and the one we decide today.

*Id.* at 164-65 (citations omitted). The Court then turned to the substantive question properly before it.

In resolving the question whether different standards of negligence apply to the employee and the railroad under the FELA, the Court observed that, "[a]bsent express language to the contrary, the elements of a FELA claim are determined by reference to the common law." *Id.* at 165-66. Thus, it was "strong evidence" against Missouri's disparate standards that the common law employed the same standard for negligence and contributory negligence. *Id.* at 168. Sorrell argued, however, that the FELA did contain an explicit statutory alteration from the common-law standard for negligence; specifically, the Act provides that the railroad is liable if its negligence contributed in whole or in part to the employee's injuries. The Court disagreed that this language suggested that it should depart from the common-law rule of applying the same standard of negligence for both the employee and the railroad:

The inclusion of this language in one section and not the other does not alone justify a departure from the common-law practice of applying a single

standard of causation. It would have made little sense to include the "in whole or in part" language in Section 3, because if the employee's contributory negligence contributed "in whole" to his injury, there would be no recovery against the railroad in the first place. The language made sense in Section 1, however, to make clear that there could be recovery against the railroad even if it were only partially negligent.

Even if the language in Section 1 is understood to address the standard of causation, and not simply to reflect the fact that contributory negligence is no longer a complete bar to recovery, there is no reason to read the statute as a whole to encompass different causation standards. Section 3 simply does not address causation. On the question whether a different standard of causation applies as between the two parties, the statutory text is silent.

*Id.* at 170-71. The Court thus concluded that the "FELA does not abrogate the common-law approach, and that the same standard of causation applies to railroad negligence under Section 1 as to plaintiff contributory negligence under Section 3." *Id.* at 171.

Justice Souter, joined by Justices Scalia and Alito, filed a separate concurring opinion. Justice Souter believed that the briefs adequately had addressed the issue of the proper standard of causation under the FELA and, therefore, thought it "fair to say a word about the holding in *Rogers*." *Id.* at 173 (Souter, J., concurring). The Justice con-

tinued that, "[d]espite some courts' views to the contrary, *Rogers* did not address, much less alter, existing law governing the degree of causation necessary for redressing negligence as the cause of negligently inflicted harm; the case merely instructed courts how to proceed when there are multiple cognizable causes of an injury." *Id.* (footnote omitted). Justice Souter explained that, although Congress abrogated several common-law rules in the FELA, the "FELA said nothing, however, about the familiar proximate cause standard for claims either of a defendant-employer's negligence or a plaintiff-employee's contributory negligence." *Id.* at 174. Turning then, specifically, to *Rogers*, Justice Souter wrote:

> *Rogers* left this law where it was. We granted certiorari in *Rogers* to establish the test for submitting a case to a jury when the evidence would permit a finding that an injury had multiple causes. 352 U.S., at 501, 506. We rejected Missouri's "language of proximate causation which ma[de] a jury question [about a defendant's liability] dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury." *Id.*, at 506. The notion that proximate cause must be exclusive proximate cause undermined Congress's chosen scheme of comparative negligence by effectively reviving the old rule of contributory negligence as barring any relief, and we held that a FELA plaintiff may recover even when the defendant's action was a partial cause of injury but not the sole one. Recovery under the statute is possible, we said, even when an employer's contribution to injury was

slight in relation to all other legally cognizable causes.

*Id.* at 174-75. Justice Souter did acknowledge that "clarity was not well served by the statement in *Rogers* that a case must go to a jury where 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury of death for which damages are sought.'" *Id.* at 175 (quoting *Rogers*, 352 U.S. at 506). Nevertheless, he believed that the passage "spoke to apportioning liability among the parties, each of whom was understood to have had some hand in causing damage directly enough to be what the law traditionally called a proximate cause." *Id.*

Justice Ginsburg, concurring in the judgment, also wrote separately. Relying on many of the authorities that Mr. McBride has relied upon in the present case, Justice Ginsburg stated that the question of the proper standard of causation under the FELA "is long settled, we have no cause to reexamine it." *Id.* at 177 (Ginsburg, J., concurring in the judgment). She explained her rationale accordingly:

> In *Consolidated Rail Corporation v. Gottshall*, 512 U.S. 532, 543 (1994), we acknowledged that "a relaxed standard of causation applies under FELA." Decades earlier, in *Crane v. Cedar Rapids & Iowa City R. Co.*, 395 U.S. 164 (1969), we said that a FELA plaintiff need prove "only that his injury resulted in whole or in part from the railroad's violation." *Id.*, at 166 (internal quotation marks omitted). Both decisions referred to the Court's oft-cited opinion in *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500 (1957), which declared: "Under [FELA] the test of

a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought.*" Id.*, at 506 (emphasis added). *Rogers*, in turn, drew upon *Coray v. Southern Pacific Co.*, 335 U.S. 520, 524 (1949), in which the Court observed: "Congress . . . imposed extraordinary safety obligations upon railroads and has commanded that if a breach of these obligations contributes in part to an employee's death, the railroad must pay damages."

These decisions answer the question Norfolk sought to "smuggle . . . into" this case, . . . *i.e.*, what is the proper standard of causation for railroad negligence under FELA. Today's opinion leaves in place precedent solidly establishing that the causation standard in FELA actions is more "relaxed" than in tort litigation generally.

A few further points bear emphasis. First, it is sometimes said that *Rogers* eliminated proximate cause in FELA actions. . . . It would be more accurate, as I see it, to recognize that *Rogers* describes the test for proximate causation applicable in FELA suits. That test is whether "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U.S., at 506.

. . . .

FELA was prompted by concerns about the welfare of railroad workers. . . . "We have liberally

> construed FELA to further Congress' remedial goal." *Gottshall*, 512 U.S., at 543. With the motivation for FELA center stage in *Rogers*, we held that a FELA plaintiff can get to a jury if he can show that his employer's negligence was even the slightest cause of his injury.

*Id.* at 177-78 (citations omitted). Thus, at least in Justice Ginsburg's view, the Court left intact a relaxed standard for causation under the FELA on the authority of *Rogers* as well as the Court's subsequent FELA case law.

## B.  Application of FELA cases

As noted above, CSX urges us to follow the rationale set forth in Justice Souter's concurring opinion. Justice Souter, CSX argues, persuasively demonstrates how the courts of appeals have gone awry in interpreting *Rogers*. CSX urges us to accept Justice Souter's critique and to realign our own case law with that of the Supreme Court. In righting our course, CSX notes, we would not be alone. Most recently, the Supreme Court of Utah, prompted by the Court's decision in *Sorrell*, has read *Rogers* in a more guarded way and held that common-law proximate cause is the correct standard of causation under the FELA. *See Raab v. Utah Ry. Co.*, 221 P.3d 219 (Utah 2009).[7]

---

[7] Although CSX lists six state courts of last resort which, it claims, adhere to the requirement of proximate cause in FELA cases, upon closer examination, it is clear that several states to

(continued...)

Justice Souter's critique of the existing case law is not without considerable force. Section 1 of the FELA could be read only as abrogating the common-law rule of contributory negligence and not as articulating a general standard for negligence. Even after *Rogers*, the Supreme Court has instructed that, for purposes of the FELA, unless common-law principles "are expressly rejected in the text

---

[7] (...continued)

which CSX refers do not require FELA plaintiffs to establish "proximate cause," that is a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *see supra* note 3. For instance, in *Snipes v. Chicago, Central & Pacific Railroad Co.*, 484 N.W.2d 162, 164-65 (Iowa 1992), the court states that "[r]ecovery under the FELA requires an injured employee to prove that the defendant employer was negligent and that the negligence proximately caused, in whole or in part, the accident"; however, it then goes on to quote the standard from *Rogers* and observes that this is a "low threshold for recovery." Additionally, in three states named by CSX, Minnesota, Ohio and Nebraska, later appellate court cases, relying on *Rogers*, hold that FELA claims are subject to a less stringent causation requirement than common-law claims. *See, e.g., Hager v. Norfolk & W. Ry. Co.*, No. 87553, 2006 WL 3634373, at *5 (Ohio App. Dec. 14, 2006); *Crafton v. Union Pac. R. Co.*, 585 N.W.2d 115, 123 (Neb. App. 1998) ("The quantum of evidence required to establish liability in a FELA action is lower than that required in an ordinary negligence action. The common-law standard of proximate cause is not applicable to FELA." (citations omitted)); *Narusiewicz v. Burlington N. R. Co.*, 391 N.W.2d 895, 898-99 (Minn. App. 1986). At most, therefore, Utah, Montana and West Virginia still apply traditional formulations of proximate cause in FELA cases.

of the statute, they are entitled to great weight." *Gottshall*, 512 U.S. at 544; *see also Sorrell,* 549 U.S. at 165-66 ("Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law."). Proximate causation is not explicitly mentioned in the statute, and the Court never has identified proximate causation as among those principles of common law that have been abrogated by the FELA. *Gottshall*, 512 U.S. at 543-44. Furthermore, Justice Souter's reading of *Rogers* is a plausible one. As Justice Souter correctly explains in his concurrence, *Rogers* itself was a case that involved multiple causes, and much of *Rogers* speaks directly to the issue of when a case with multiple causes must be submitted to a jury. *See Rogers*, 352 U.S. at 504-05; *Sorrell*, 549 U.S. at 174-75 (Souter, J., concurring) ("We granted certiorari in *Rogers* to establish the test for submitting a case to a jury when the evidence would permit a finding that an injury had multiple causes.").

Nevertheless, there are several important countervailing considerations that preclude us from embracing Justice Souter's view at this juncture. First, we must recognize that, in *Sorrell,* the Supreme Court did not address, much less decide, the issue that CSX would have us decide today in this case. Justice Souter's concurrence garnered the votes of only two other members of the Court. The majority of the Court believed that causation in general was not properly raised. Although there is some indication that, had it reached the substantive issue, at least some members of the majority may have been sympathetic to Justice Souter's view, *see Sorrell*, 549 U.S. 170-71 (suggesting that Section 1 could be under-

stood as "simply . . . reflect[ing] the fact that contributory negligence is no longer a complete bar to recovery"), we have been admonished not to anticipate future actions of the Supreme Court. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("The Court of Appeals was correct in applying that principle [of stare decisis] despite disagreement with *Albrecht*, for it is this Court's prerogative alone to overrule one of its precedents."); *Nanda v. Bd. of Trs. of the Univ. of Ill.*, 312 F.3d 852, 854 (7th Cir. 2002) (Ripple, J., in chambers) ("In deciding a case, a circuit judge must not anticipate future changes in jurisprudential course by the Supreme Court of the United States; it is the task of a circuit judge to apply established doctrine.").

A related consideration is that we must treat with great respect the prior pronouncements of the Supreme Court, even if those pronouncements are technically dicta. *See Nichol v. Pullman Standard, Inc.*, 889 F.2d 115, 120 n.8 (7th Cir. 1989). As noted above, Justice Souter "stipulate[d] that clarity was not well served by the statement in *Rogers* that a case must go to a jury where 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" *Sorrell*, 549 U.S. at 175. Justice Souter believed that this language "spoke to apportioning liability among parties," each of whom had proximately caused the damage. *Id.* With great respect to Justice Souter's explanation, we are not free to ignore the subsequent statements by the Supreme Court that suggest a much broader reading of this language. Indeed, in *Gottshall*, the

Court stated: "We have liberally construed FELA to further Congress' remedial goal. For example, we held in *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500 (1957), that a relaxed standard of causation applies under FELA." 512 U.S. at 543. We also cannot discount pre-*Rogers* case law that is consistent with a broader reading of the quoted language in *Rogers*. *See Coray*, 335 U.S. at 524 ("The language selected by Congress to fix liability in cases of this kind is simple and direct. Consideration of its meaning by the introduction of dialectical subtleties can serve no useful interpretative purpose. The statute declares that railroads shall be responsible for their employees' deaths 'resulting in whole or in part' from defective appliances such as were here maintained."); *see also Crane,* 395 U.S. at 166 (stating that a FELA plaintiff "is not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the Act").

Additionally, before creating a division of authority among the circuits, we take respectful note that our current interpretation of *Rogers* is in accord with the interpretation adopted by all of our sister circuits. All have taken the view, based on *Rogers*, that there is a "relaxed" standard of probable cause under the FELA.[8] Adopting Justice Souter's interpretation of *Rogers*, therefore, would not only run contrary to our own case law, but would cause a conflict with every other court of appeals, a step

---

[8] As we have discussed previously, we disagree with CSX that the First Circuit has taken the contrary view. *See supra* note 5.

that we do not take lightly. *See Russ v. Watts*, 414 F.3d 783, 788 (7th Cir. 2005) (invoking "the interest in avoiding unnecessary intercircuit conflicts" as a "compelling" reason for reevaluating our own precedent (internal quotation marks and citations omitted)); *United States v. Gwaltney*, 790 F.2d 1378, 1388 n.4 (9th Cir. 1986) ("Unnecessary conflicts among the circuits are to be avoided."); *United States v. Scaife*, 749 F.2d 338, 344 (6th Cir. 1984) (agreeing that "intercircuit conflicts are to be avoided if possible").

Finally, because we deal, at bottom, with a statute enacted by Congress, we must give respectful attention to the Legislative Branch's reaction to the Supreme Court's treatment of the FELA. Congressional inaction, in the wake of *Rogers* and circuit law broadly interpreting *Rogers*, counsels against adopting a common-law formulation of probable cause in FELA cases. As we noted in a prior FELA case:

> We will not assume that Congress is unaware of the judicial gloss that the Act has received. If the Act as it has been interpreted and applied does not correctly reflect what was intended by the legislative branch then the change must be made there. The duty of this court is to follow what is now well-established authority.

*Heater v. Chesapeake & Ohio Ry. Co.*, 497 F.2d 1243, 1246 (7th Cir. 1974). Congress, faced with the Supreme Court's articulation of the governing standards in FELA cases and the consistent interpretation of that articulation by

courts of appeals, has not seen fit to amend the FELA to clarify or correct the standard of causation that has been applied almost universally.

In light of these considerations, we decline to hold that, in light of the Supreme Court's opinion in *Sorrell*, common-law proximate causation is required to establish liability under the FELA. Having reached this conclusion, we cannot say that the district court committed instructional error in refusing CSX's proffered instruction. Similarly, we find no error in the causation instruction given to the jury. The instruction stated: "Defendant 'caused or contributed to' plaintiff's injury if defendant's negligence played a part—no matter how small—in bringing about the injury." R.43 at 13. This language simply paraphrases the Supreme Court's own words in *Rogers* and, therefore, correctly states the law as the Supreme Court has articulated it up to now. *See Rogers*, 352 U.S. at 506 (requiring that a case be submitted to the jury when "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought").[9]

## Conclusion

Because the jury instructions "correctly and completely informed the jury of the applicable law," *Huff v. Sheahan*,

---

[9] Because we conclude there was no instructional error, we do not reach the difficult question whether any error was prejudicial.

493 F.3d 893, 899 (7th Cir. 2007), the judgment of the district court is affirmed.

AFFIRMED